73 So.2d 403 (1954)
VOELKER
v.
COMBINED INS. CO. OF AMERICA.
VOELKER
v.
LIFE & CASUALTY INS. CO. OF TENNESSEE.
Supreme Court of Florida. Division B.
June 25, 1954.
*404 Mizell & Carmichael, West Palm Beach, for appellant.
Earnest, Lewis, Smith & Jones, West Palm Beach, for appellee.
HOBSON, Justice.
These cases were consolidated for trial in the circuit court and are likewise consolidated upon appeal. The suit against Combined Insurance Company of America is a common law action predicated upon two policies of insurance which were issued to Edward H. Voelker on April 4, 1946. The suit against Life and Casualty Insurance Company of Tennessee is upon an insurance policy issued by that company to Edward H. Voelker during his lifetime.
Although the evidence in each case is the same, we are forced, because of a difference in language used in the policies issued by the two insurance companies, to separate this opinion into two divisions, the first of which will deal with the case of Voelker v. Combined Insurance Company of America and the second with the case of Voelker v. Life and Casualty Insurance Company of Tennessee.
Edward H. Voelker left West Palm Beach, Florida, at approximately 10:30 or 11:00 P.M., on the 13th day of February, 1952, for a trip to Dunedin, Florida. He was driving his own automobile when he departed from West Palm Beach and while on this trip he met his death at a point near Six Mile Bridge on State Road 80, in Palm Beach County. At about 1:20 A.M., on February 14, 1952, one C.S. Clements and his wife discovered the automobile driven by Voelker, which evidently had been involved in some type of accident, on the south side of the canal that borders State Road 80.
Since there were no eyewitnesses to the ostensible accident which either caused or immediately preceded Edward Voelker's death, the testimony is composed entirely of circumstantial evidence. According to the witnesses who observed the automobile as well as the scene of the tragedy, the physical facts indicated that Voelker's car, which *405 was a 1941 black Pontiac, had proceeded to cross Six Mile Bridge, thereafter obviously had made a sharp curve to the left and had run down the bank before coming to rest on the edge of the canal and in the position heretofore outlined. The left front tire of the car contained about one half its normal air capacity. The front and rear fenders on the left side of the car were scraped and battered. The back fender which "looked like it had been sideswiped" was bent in slightly "with some of what looked like grey paint" on it. The door handle on the left front door was broken down, the lock was jammed, the left front headlight was broken and some glass which matched the glass of this headlight was found near the end of the bridge. The ignition switch was turned off, and the light switch, which was of the pull and push button type, was also in the "off" position. The right front door of the automobile was open wide and the car was out of gear. About twenty feet from the end of the bridge the witness F.O. Cole found a headlight rim, with grey paint upon it, which had been run over and looked "like it came off a Model A Ford."
Mr. Clements, who, with his wife, discovered the wrecked car, reported the matter to the Highway Patrol. Patrolman Joseph P. Bertrand made an investigation and found Voelker's body floating in the canal about eight feet in front of the car. He caused the automobile to be towed into Belle Glade, Florida. Constable Whitlock also made an investigation at the scene of the accident and ordered the body released to the Berry Funeral Home, of Belle Glade and Pahokee, Florida. Voelker's body was immediately embalmed and later delivered to the Scobee-Vogel Funeral Home in West Palm Beach. No witness who examined or observed the body of Edward Voelker found or saw any marks or abrasions thereon, or, indeed, any other indications of external injury, and Voelker's eyeglasses were still in place.
These cases were tried before a jury which rendered verdicts in favor of the appellant. The appeal in each case is from the final judgment entered by the trial judge upon motion of counsel for appellee for a directed verdict after entry of the original final judgment rendered pursuant to the jury's verdict.
Each of the policies issued by the Combined Insurance Company of America insured Voelker "against loss caused by bodily injuries which are not caused or contributed to by disease, and are effected exclusively by accidental means". Section B of each policy provides: "If Such Injuries shall be sustained by the Insured, and shall within thirty days from the date of the accident causing Such Injuries be the sole cause of loss of life by the Insured, and provided Such Injuries to the Insured shall occur: * * * While actually driving or riding in any automobile, * * * the Company will pay the sum of $500.00." (Italics supplied.)
As aforestated, all of the evidence relied upon by appellant is circumstantial in character. In the comparatively recent case of City of Jacksonville v. Waldrep, Fla., 63 So.2d 768, we re-affirmed the rule that when circumstantial evidence is relied upon in a civil case as a method of proof any reasonable inference deducible therefrom which would authorize recovery must outweigh each and every contrary reasonable inference if the plaintiff is to prevail. We quote from our opinion in the case of King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858, 859: "Where circumstantial evidence is relied on in a civil case to prove an essential fact or circumstance essential to recovery, the rule is that the particular inference of the existence of the fact relied on as arising from the circumstances established by the evidence adduced, shall outweigh all contrary inferences to such extent as to amount to a preponderance of all of the reasonable inferences that might be drawn from the same circumstances." See Fireman's Fund Indemnity Co. v. Perry, 149 Fla. 410, 5 So.2d 862, and cases cited in our opinion in City of Jacksonville v. Waldrep, supra.
For the sake of emphasis we again call attention to the fact that in the cases of Fireman's Fund Indemnity Co. v. Perry, supra, and City of Jacksonville v. Waldrep, supra, we receded from our opinion in the *406 case of Florida East Coast R. Co. v. Acheson, 102 Fla. 15, 135 So. 551, 137 So. 695, 140 So. 467, wherein we had invoked in a civil case the rule with reference to circumstantial evidence which prevails in criminal cases. We also state anew that in this jurisdiction the rule in civil cases when circumstantial evidence alone is relied upon differs from and is less stringent than the rule which governs in criminal cases.
The fact that circumstantial evidence is relied upon in a civil action at law does not alter either the rule that it is solely within the province of the jury to evaluate or weigh the evidence or that the burden of establishing a right of recovery by a preponderance of the evidence is upon the plaintiff. Consequently, in such a case if the circumstances established by the evidence be susceptible of a reasonable inference or inferences which would authorize recovery and are also capable of an equally reasonable inference, or inferences, contra, a jury question is presented. We cannot overemphasize our use of the adjective "reasonable" as modifying the noun "inference". Of course if none of the inferences on the one hand accords with logic and reason or human experience, while on the other hand an inference which does square with logic and reason or human experience is deducible from the evidence, the question is not for the jury but is one of law for the court.
There are several reasonable inferences which we feel might have been drawn by the jury from the circumstantial evidence in this case. Edward Voelker might have suffered a heart attack [which we believe might properly be classified as an internal bodily injury] following the accident and might conceivably have died from such attack while standing on the edge of the canal and his dead body have fallen into the water. He could have received internal bodily injuries, such as a brain concussion, spinal cord injury or, indeed, even a broken neck, and after leaving his automobile could have walked around the front thereof to appraise the situation, and while standing at the bank of the canal might have dropped dead into the water. Such inferences pre-suppose that Voelker received bodily injuries "while actually driving or riding" in the car and they might permit the conclusion that his death was attributable solely to such bodily injuries. There is, however, another equally reasonable contrary inference that he received no bodily injuries either external or internal, alighted from his car, walked around to the front thereof to perform the very normal act of evaluating the predicament in which he found himself and without realizing his proximity to the waters of the canal may accidentally have stepped, or tripped and fallen, therein and have drowned as a consequence thereof. Assuming that the latter inference explains the manner in which he met his death, the appellant could not have prevailed in this suit because such inference excludes the essential premise that Edward Voelker received bodily injuries which caused his death "while actually driving or riding" in his automobile. Again the evidence was susceptible of another contrary inference, that Voelker was addled or semiconscious as a result of internal bodily injuries and while in such condition might have slipped or tripped and fallen into the canal and drowned. This inference does not exclude the theory that the decedent received bodily injuries "while actually driving or riding" in his automobile, but does negative the thought that bodily injuries were the "sole" cause of loss of his life.
It is obvious that from the fact the car showed it had been damaged, as hereinbefore outlined, the jury inferred that Voelker had met with an accident "while actually driving or riding" in his automobile. It is also patent that the jury predicated upon such inference the further inference that he received bodily injuries in such accident. Will this court under any circumstances sanction such action, which appears to violate the general rule that inference may not be founded upon inference any more readily than presumption may be predicated upon presumption? In search of the proper answer to this query we have pursued the thought that perhaps there is or should be an exception to the rule which prohibits the pyramiding of inferences.
*407 It is our considered judgment that when an inference, such as the inference that Voelker experienced an accident while driving his automobile across Six Mile Bridge, is inescapable, that is to say when no contrary reasonable inference may be indulged, such inference is elevated for the purpose of further inference to the dignity of an established fact. We are also convinced that this principle creates an exception to which the often-stated rule against laying inference upon inference must yield, or perhaps it would be more accurate to say that the rule itself should never be applied without reference to its purpose, which is nothing more nor less than to protect litigants from verdicts or judgments based upon speculation. We do not believe that the "inference upon inference" rule, whose common acceptance has been justly and appropriately criticized by Professor Wigmore (1 Wigmore on Evidence, 3d Ed., Sec. 41, pp. 434-441), should be construed to mean that under no conceivable circumstances may one inference be deduced from another. We think, however, that such method of establishing an ultimate fact should not ordinarily be indulged unless the first inference meets a test which may be analogized to the criminal rule concerning circumstantial evidence, i.e., in the ordinary case, only if the prior or basic inference is established to the exclusion of any other reasonable theory should another be drawn from it. See 1 Wigmore on Evidence, Sec. 41, supra, and New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948, which is interestingly similar to the present case on its basic facts.
Although it has not always been admitted by the courts, it can no longer be doubted that cases may and do exist wherein circumstantial evidence is as convincing of an asseverated fact as is testimonial evidence. This we believe to be such a case, and we hold that the jury would have been entirely justified to have inferred, from its prior inescapable inference that Voelker met with an accident, that he received bodily injuries "while actually driving or riding" in his automobile. The latter inference however, is not the last which must be drawn before appellant may be said to have proven her right to recover under the policies of insurance here involved.
Appellant is not entitled to a favorable decision unless the inference that Voelker received bodily injuries "while actually driving or riding" in his automobile is the only reasonable inference which may be drawn from the prior inference that Voelker met with an accident. In other words, this second inference must meet the test of the criminal rule, as did the first inference, if it is to be a proper predicate for the further inference that "bodily injuries" were the sole cause of loss of Voelker's life. Is this second inference one which may be said to exclude all other reasonable theories? We think not.
In view of the fact that no bruises or abrasions were found upon Voelker's body, it is equally reasonable to assume that he received no bodily injuries and that he, as aforementioned, walked around to the edge of the canal to appraise this situation, slipped or tripped into the waters of the canal and drowned, or that he and the person driving the other car involved in the accident had an altercation and that such person pushed or shoved Voelker, intentionally or unintentionally, into the canal, and fled the scene, whereupon Voelker met his death by drowning.
The theory that Voelker met his death by drowning cannot be excluded, for there is no evidence upon the question whether water was found in his lungs and none which even suggests that credence should be given to the supposition that the body of a person who meets death by drowning will not float until sufficient time has elapsed for decomposition to set in. If indeed this supposition be more than folk-lore, it is not an open and notorious fact of which this Court can take judicial notice. There may be other reasonable inferences, which we do not at the moment envisage, that may be drawn from the inescapable inference that Voelker had an accident with another motor vehicle. However, *408 if there were but one reasonable inference other than that Voelker received bodily injuries in the accident the jury would not have been justified in inferring that Voelker's internal bodily injuries were the sole cause of his death.
We are forced to agree with the learned trial judge that the circumstantial evidence contained in this record is not as conclusive in character as it is required to be to justify the jury's verdict in favor of appellant. The final judgment in the case of Voelker v. Combined Insurance Company of America must therefore be affirmed.
We next turn our attention to the case against the Life and Casualty Insurance Company of Tennessee. We quote from the policy issued by that company upon the life of Edward Voelker, deceased: "This policy does not cover * * * injuries either fatal or nonfatal of which there is no visible contusion or wound on the exterior of the body of the insured causing the death * * *".
Counsel for appellant contend that this policy should be construed most strictly against the insurance company. The above quoted provision of nonliability is clear and not ambiguous, and consequently we are not permitted to give any construction to it other than that which is evident from a reading thereof. Courts are not authorized to write a new contract for the parties on the pretext of construing the terms thereof when the wording employed is plain, crystal clear and unambiguous. Goldsby v. Gulf Life Ins. Co., 117 Fla. 889, 158 So. 502. See also the Mississippi case of Jackson Steam Laundry v. Aetna Casualty & Surety Co., 156 Miss. 649, 126 So. 478, and Kansas City Life Insurance Co. v. Freeman, 5 Cir., 120 F.2d 106.
Since the evidence is uncontroverted that there were no visible marks or abrasions on the "exterior of the body" of the deceased, the final judgment in favor of appellee must be affirmed.
The final judgment in each of the cases herein considered should be and is hereby 
Affirmed.
ROBERTS, C.J., DREW, J., and TAYLOR, Associate Justice, concur.