PER CURIAM.
Supreme Court of Florida
Tallahassee
June 21, 1956
Honorable LeRoy Collins
Governor of Florida Tallahassee, Florida
Dear Governor:
We are in receipt of your request of May 25, 1956, for this Court’s opinion pursuant to Section 13, Article IV of the Constitution [F.S.A.] as follows:
“Honorable E. Harris Drew, Chief Justice, and Honorable Justices of the Supreme Court of Florida
“Supreme Court Building
“Tallahassee, Florida
“Re: Absence of Circuit Judge; filling of vacancy
“Gentlemen:
“Under Section 13 of Article IV of the Constitution of Florida, the Governor may at any time request the Opinion of the Justices of the Supreme Court upon any question * * * * as to the interpretation of any portion of this Constitution upon any question affecting his Executive powers and duties * * ’
“Under date of July 20, 1955,1 asked you for an opinion touching upon the same matter hereinafter discussed which was answered by your Advisory Opinion reported in 81 So.2d 778. New facts on the same matter have now come to my attention, malting it expedient that I again ask you for an opinion.
“C. E. Chillingworth for many years was a Circuit Judge of the Fifteenth Judicial Circuit of Florida, resident in Palm Beach County. In November of 1954, he was re-elected to a new term which began the following January. On or about June 15, 1955, he and his wife suddenly disappeared. To date nothing has been heard from them, or have their bodies been found. Scores of law enforcement officers have worked diligently, extremely high rewards have been posted, but nothing has happened.
“I am in receipt of official detailed reports from the Sheriff of Palm Beach County and from the State Attorney for the Fifteenth Judicial Circuit. These reports, which are attached hereto, after fully describing the circumstances surrounding the disappearance and the physical evidences present at the scene, conclude with the opinion of both officers that, based upon all the surrounding circumstances, Judge and Mrs. C. E. Chillingworth met their deaths at the hands of a person or persons unknown on or about June 15, 1955. As Governor, it is my belief that this is a correct conclusion.
“It has also been officially reported to me further that the Supervisor of Registration of Palm Beach County, under Section 98.201 F.S. [F.S.A.], *758 has officially cancelled the voting registration of Judge Chillingworth. The official State records also show that no salary has been requisitioned by Judge Chillingworth since his disappearance.
“Since the date of the Judge’s disappearance, Palm Beach County, of course, has had the services of one less Circuit Judge than the law provides for. Since the missing Judge’s term has many years yet to run, no relief is in prospect unless new facts develop proving actual death whereby Section 114.01(1) F.S. [F.S.A.] becomes operative. I am advised by the resolution of Palm Beach County Bar Association that since 1943 Circuit Court litigation in that County has increased almost 100 percent in Common Law cases and almost 600 percent in Chancery cases and that since Judge Chil-lingworth’s disappearance it is impossible for the remaining two Judges to clear the increasing case load without long delays, even with the assistance of assigned judges from other circuits, whose dockets permit such assignments. From facts brought to my attention, therefore, it appears such disappearance has resulted in a breakdown in the prompt administration of justice in Palm Beach County which is growing worse day by day, and' will continue to grow worse in the long remaining years of Judge Chillingworth’s term unless a successor can be duly named.
“I assume the Constitution of Florida, as an organic act, provides a remedy for every failure in the machinery of government unless the clear language thereof evidences a contrary intent. Article XVI, Section 17, of the Constitution provides that ‘No person shall hold any office or trust or profit under the laws of this State without devoting his personal attention to the duties of the same.’ No one is presently carrying out the functions of the office of Judge Chillingworth in Palm Beach County. From the facts submitted to me, this is not a case of absence with an intention'to return such as illness, military duty and like matters, but is one already of almost a year’s duration, and one surrounded by facts which, in the opinion of those best able to know, point up a homicidal death on or about June IS, 1955.
“The Constitution requires the Governor to take care that the laws are faithfully executed. Article IV, Section 6. The laws o'f Florida cannot be so executed in Palm Beach County under present conditions inasmuch as long delayed justice is often no justice at all.
“The Constitution gives the Govern- or the power to fill vacancies. Article IV, Section 7, provides: ‘When any office, from any cause, shall become vacant, and no mode is provided by this Constitution or by the laws of the State for filling such vacancy,' the Governor shall have the power to fill such vacancy by granting a commission for the unexpired term.’ The Legislature has sought to implement this provision by the passage of Chapter 114 F.S. [F.S. A.] Section 114.01 of such Chapter lists some 10 specific instances where a vacancy is deemed to exist. An unexplainable disappearance as involved in the case of Judge Chillingworth, is not one of the specific instances listed in Section 114.01. However, Chapter 114, F.S. [F.S.A.] contains a flexible provision in Section 114.04, which indicates the instances detailed in Section 114.01 are not the only ones where the Governor may exercise the power to appoint a successor. Such Section 114.04 provides that in all cases such as listed in Section 114.01 and in all other cases in which a vacancy may occur, an appointment may be made.
“Therefore, reading Article IV, Section 7, ■ arid-Chapter 114 F.S. [F.S.A.] *759 together, and considering the impact of Article XVI, Section 17 and Article IV, Section 6, and in the light of all the factual circumstances above related, I am constrained to ask your official advice upon the following questions :
“1. Is there a vacancy in the office of Circuit Judge of the Fifteenth Judicial Circuit formerly filled by C. E. Chil-lingworth ?
“2. If so, did such vacancy arise on or about June 15, 1955?
“3. If so, is it within my power to fill such vacancy by appointment for the unexpired term?
“Respectfully,
“LeRoy Collins
“Governor”
Since your request for our opinion dated July 20, 1955 (Answer, 81 So.2d 778), in re the same subject matter, the situation has changed materially. It now appears that Judge and Mrs. C. E. Chillingworth mysteriously disappeared on or about June 15, 1955, and no tidings of them have been received since, though they have been gone for more than a year and a very exhaustive search has been carried on to locate them. One of the largest rewards in the history of the country, more than $100,000, has been posted for those responsible for their disappearance or for information leading to their whereabouts but without results. The State Attorney’s office, the Attorney General’s office, the Sheriff’s office, the F.B.I. and other law enforcement agencies have run down every lead secured but without avail.
It is shown that Judge and Mrs. Chilling-worth were in excellent health, were very highly respected, were people of substantial means, were very happy in their domestic life, thoroughly enjoyed their family and friends and were loved by a wide circle of friends. The State Attorney of the Circuit (Fifteenth) points out that “the evidence clearly indicates that a desperate ■struggle occurred on the beach at his (Judge Chillingworth’s) Manalapan home near Palm Beach on the night or morning of their disappearance and foul play was apparent.” The State Attorney also points out that from the evidence and circumstances there is no basis for any theory that Judge Chillingworth voluntarily abandoned his position, home, family and friends of a lifetime, but that both Judge and Mrs. Chillingworth were the victims of a homicide and met their deaths at the hands of a person or persons unknown on or about June 15, 1955. The Sheriff of Palm Beach County has exhausted every means possible to solve the mystery and his report coincides with that of the State Attorney.
In November, 1954, Judge Chillingworth was re-elected for a full six-year term beginning in January, 1955. Section 114.01, Florida Statutes 1955, F.S.A., provides the circumstances under which an office becomes vacant and Sec. 114.04, Florida Statutes 1955, F.S.A., provides the means for filling such vacancies. If Judge Chilling-worth was the victim of a homicide, his position could be properly filled under the latter statute. While it is not positively known that he was such a victim, we think that in view of the desperate condition of the Circuit Court docket in that Circuit as pointed out in your letter, the fact that Judge Chillingworth has requisitioned no salary since his disappearance, that under Sec. 98.201, Florida Statutes, F.S.A., the Supervisor of Registration of Palm Beach County has cancelled his voting registration and for other reasons pointed out in your letter, as Governor you would be authorized to make proclamation of these facts, declare the place vacant and appoint a successor.
This advice is proffered on the theory that the office of Circuit Judge is a key position in our state government; that the administration of justice suffers immeasurably when it ceases to function and that under the circumstances the law never contemplated a hiatus in government such *760 as is shown to exist by the disappearance of Judge Chillingworth. We realize that this advice is subject to the very rare possibility that if Judge Chillingworth should return during the term for which he was elected and show that he had been kidnapped or forcibly detained, or otherwise absent for reasons beyond his control, he could by quo warranto recover his title to the office. This would present complications that would have to be remedied by court decree or legislative act, but that possibility now seems so remote that the interest of the people of the Circuit and the constitutional duty imposed on you to see that the law is faithfully executed would justify the undertaking.
Respectfully yours
E. HARRIS DREW Chief Justice
GLENN TERRELL
B. K. ROBERTS
CAMPBELL THORNAL
STEPHEN C. O’CONNELL Justices
Supreme Court of Florida Tallahassee
June 21, 1956
To His Excellency,
LeRoy Collins,
Governor of Florida.
Dear Governor:
This is in reply to your request for an advisory opinion under date of May 25, 1956. Although I concur in the general conclusion reached by the majority of the Court in connection with your first question, the following expresses my opinion in detail with reference to the first question as well as the two remaining questions.'
Your first request for an adyisory opinion on this subject dated a little more than a month after the tragic disappearance of Judge Chillingworth, contained a showing of facts then known to you which we were constrained to hold insufficient to create a vacancy in the office which you were authorized to fill. 81 So.2d 778.
A year has now elapsed since the incident occurred, and after the most diligent and continuous search and investigation of the judicial circuit which Judge Chilling-worth was serving no trace of him has been found. His voting registration has been officially cancelled, and no salary has been requisitioned since his disappearance. Upon this showing, and the additional facts given in the inclosures to your letter, I can come to no conclusion except that this incumbent has “ceased to be an inhabitant” of the Fifteenth Judicial Circuit within the meaning of F.S. § 114.01(4), F.S.A., and that the office to which he was elected has been “abandoned”, In re Advisory Opinion to the Governor, 1942, 151 Fla. 44, 9 So.2d 172, 140 A.L.R. 1492; State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248, 255; and is thus to be “deemed vacant” under F.S. § 114.01, F.S.A. Í therefore find it unnecessary to consider the effect of the language “and in all other cases in which a vacancy may occur * * * ” contained in F.S. § 114.04, F.S.A., to which you allude.
Of course, it would be impossible to prove conclusively that a person has “ceased to be an inhabitant” of a particular place without establishing his death or proving that he has become an inhabitant of some other place. I do not anticipate, however, that the proof needed to bring the case within F.S. § 114.01(4) must be of a conclusive nature. It will be noted that all of the evidence you present in this matter is circumstantial in character. The most stringent rule of proof by circumstantial evidence known to our law is the criminal rule, “where the inference drawn must not only be consistent with the fact sought to be proved, but wholly inconsistent with any other reasonable inference to the contrary.” City of Jacksonville v. Waldrep, Fla., 63 So.2d 768, 769. The rule in civil cases is less exacting, requiring only that “ ‘the particular inference of the existence of the fact relied on as arising from the circumstances established by the evidence adduced, shall outweigh all contrary inferences to such extent as to *761 amount to a preponderance of all the reasonable inferences that might be drawn from the same circumstances.’ ” Voelker v. Combined Ins. Co. of America, Fla., 73 So.2d 403, 405; City of Jacksonville v. Waldrep, supra; King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858.
We have had occasion to consider the quantum of proof required to establish death in a civil case by circumstantial evidence, and have stated that “if the fact of death is proved by evidence and inferences therefrom, then no presumption as to death, common law or statutory, need be brought into play.” Johns v. Bums, Fla., 67 So.2d 765, 767. We there held that the civil rule applied, and that only a preponderance of all reasonable inferences deducible from the circumstances was required. Manifestly, it is easier to prove that one has “ceased to be an inhabitant” of a particular location than to prove that he is dead.
In summary, that Judge Chillingworth has “ceased to be an inhabitant” of the Fifteenth Circuit, and that his return is not to be expected, may be proved circumstantially, without the aid of statutory or other presumptions, and by a preponderance of all reasonable inferences. The simple fact of his cessation of inhabitancy is sufficiently established by the failure to find any trace of him after a meticulous search of the area has been conducted for over a period of a year. The other circumstances of the case, which strongly suggest foul play, are important for their bearing upon the possibility of his return, and drive me unerringly to the conclusion that so desirable an event is not reasonably to be expected. I can say, as we said in Johns v. Burns, supra, 67 So.2d 765, 767, “it is immediately apparent that the case presented is not that of a simple unexplained absence.” It can hardly be doubted that the inferences of cessation of inhabitancy and abandonment preponderate over all reasonable contrary inferences, with the possible exception of death, which would, of course, create a vacancy under F.S. § 114.01(1), F.S.A. In either case, a vacancy exists, but I have emphasized cessation of inhabi-tancy because it has a lower threshold of proof.
From the foregoing, upon the factual situation now shown to exist, your first question must be answered in the affirmative.
Your second question must likewise be answered in the affirmative. You have given facts which must be considered as present proof of a previously existing condition. Again I analogize the situation to one in which death is sought to be proved circumstantially. In Johns v. Burns, supra, 67 So.2d 765, after reviewing the authorities, we concluded that the time of death could be established, by circumstantial evidence, as having occurred on or about the time of disappearance, in spite of the presumption of death arising from seven years of simple unexplained absence and the rule that death is deemed to have occurred at the end of that period. If the time of death can be so established, a for-tiori the time of cessation of inhabitancy and abandonment may be so proved. And from the circumstances surrounding the discovery of Judge Chillingworth’s absence, viewed in the light of later events, it is most reasonable to conclude that the vacancy in office arose on or about June 15, 1955.
In connection with your third question, Article IV, Sec. 7 of the Florida Constitution grants to the Governor the power to fill a vacancy by granting a commission for the unexpired term only when “no mode is provided by this Constitution or by the laws of the State for filling such vacancy * * *. ” We have held that under this section, as implemented by F.S. § 114.04, F.S.A., persons appointed by the Governor to fill vacancies occurring in elective offices shall take and hold such office only until the same shall be filled by election as provided by law. Advisory Opinion to Governor, 1943, 152 Fla. 686, 12 So.2d 876, 878. The office of Circuit Judge was made *762 elective by the constitutional amendment of 1942, Article V, § 46. Under Article XVIII, Sec. 6, as amended in 1944, “[t]he term of office for all appointees to fill vacancies in any of the elective offices under this Constitution shall extend only to the first Tuesday after the first Monday in January next after the election and qualification of a successor.” Thus, under the Constitution and statutes as we have heretofore construed them, your third question, as framed, must be answered in the negative, for an appointee to fill the vacancy under consideration may serve only to the day specified in amended Article XVIII, Sec. 6, after a successor has been duly elected and qualified, in the next general election, for the unexpired term of Judge Chillingworth. You do, of course, have power to malee an appointment for such period.
Respectfully yours,
T. FRANK HOBSON, Justice.