544 So.2d 255 (1989)
Robert P. SLITOR and Doreen M. Slitor, Appellants/Cross-Appellees,
v.
Colleen M. ELIAS, Appellee/Cross-Appellant.
No. 88-02042.
District Court of Appeal of Florida, Second District.
May 12, 1989.
*256 Leslie T. Ahrenholz, Fort Myers Beach, for appellants/cross-appellees.
Robert P. Henderson of Simpson, Henderson, Savage & Carta, Fort Myers, for appellee/cross-appellant.
LEHAN, Judge.
The sellers of a house appeal a judgment adverse to them in the buyer's action for damages based upon the sellers' failure to disclose defects in a swimming pool. The buyer cross-appeals the amount of damages awarded. We reach neither the points raised on the cross-appeal, nor four of the five points raised on the main appeal. We reverse on the basis of the sellers' first point  that the evidence was insufficient to establish their liability. As we will explain, there was insufficient evidence that the sellers had knowledge of defects materially affecting the value of the property, as required by Johnson v. Davis, 480 So.2d 625 (Fla. 1985).
The buyer's complaint concerned two alleged defects in the swimming pool. A description of the structure of the pool is necessary to an understanding of the complaint. The pool, which had been installed by the sellers about six years prior to this sale, has a fiberglass, in-ground hull. The four-inch thick concrete decking on the ground surface surrounding the pool slightly overlaps the top edge of the hull wall. The inside top portion of the wall is surfaced with two horizontal rows of decorative ceramic tiles. The tiles on the upper row are four-and-one-quarter inches high. Thus, the upper row of tiles, which is separated from the lower row of tiles by a line of grout, extends down to a level approximately even with the level at which the bottom of the concrete decking meets the top of the hull.
The major defect complained of was a crack between the upper and lower rows of tiles through which the pool water could leak out over the top edge of the hull and also cause some of the decorative tiles to break or fall off. The crack apparently resulted from the hull having settled, particularly in the pool's deep end. The settling had caused the hull to pull away from the concrete decking. The other defect was that the paint on the underwater surface of the pool was flaking off, thus causing the pool filter to become clogged and making it impossible to maintain a proper chemical balance in the pool.
The law in Florida currently is that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." Johnson, 480 So.2d at 629. In this case the buyer contends that the sellers knew of the defects in the swimming pool; that those defects materially affected the value of the property; that the defects were not readily observable and were, in fact, not observed by the buyer during her several visual inspections of the property prior to her purchase, at which times the pool appeared to be in satisfactory condition; and that the sellers never disclosed the pool defects.
On appeal the sellers contend that the buyer failed to present substantial, competent evidence to support liability of the sellers under Johnson. We agree that the evidence and inferences therefrom, even when construed most favorably to the buyer, fail to meet established evidentiary standards sufficiently to prove that the sellers knew of "facts materially affecting the value of the property" as required by Johnson.
The buyer testified that the first problems she encountered with the pool, which occurred within about two weeks following her October 29, 1985 purchase of the house, were cloudiness of the pool water and an inability to maintain a proper chemical balance of the water, problems she later discovered were caused by the paint on the underwater surface of the pool. She testified that at the time of the purchase she did not observe any cracks in the tiles or grout, but that the above described crack began appearing by late December 1985 and worsened from then on.
Concerning the crack and the water leakage, the buyer's expert witness testified *257 that in his opinion the settling of the pool and the resulting crack would have taken longer than three months to occur, but he could not say whether it had taken six months or a year or a couple of years. The evidence showed that the house was vacant for the ten-month period preceding the sale (although the sellers had visited the property every week or two to check on it and to do such things as gardening). The expert first viewed the pool about six months after the sale. When asked his opinion about whether the sellers knew or should have known about the crack in the pool, the expert stated that sixteen months (the period between the time the sellers moved out of the house and the time of the expert's first view of the pool) was a "considerable amount of time" and that he would not say whether the crack was or was not there prior to that time. However, he testified that his inspection of the pool revealed that the crack had previously been repaired by use of a caulking material applied to cover the crack. He could not state when this material had been applied, other than that it had been "a long time" after the pool was initially installed.
The sellers' testimony was that they had never been aware of these problems with the pool and, although they had repainted the underwater surface of the pool and had replaced some of the tiles which had fallen off, they had never noticed or repaired a crack such as the one complained of by the buyer. The sellers also presented other testimony, including testimony by the pool maintenance employee who had serviced the pool weekly for several years up until the time of the sale to the buyer. His testimony was that he had never noticed any crack or any water loss or problems with the water which were not typical of an open fiberglass pool.
We have referred to evidence presented by the sellers merely to give a more complete picture of the situation, not because that evidence has caused this court's decision to reverse the judgment for the buyer. An appellate court should not reweigh the evidence, Tsavaris v. NCNB National Bank of Florida, 497 So.2d 1338 (Fla. 2d DCA 1986), and we have not done so. The sellers' evidence simply reflects that direct evidence presented at trial did not support, and in fact contradicted, the buyer's circumstantial evidence described below which the buyer contends showed that the sellers had had knowledge of the defects.
The buyer's expert testimony about the prior repair of the crack appears to be the only evidence which can even arguably support the buyer's position that the sellers had been aware of this problem with the pool. That testimony can arguably support the buyer's position because, although there was no direct evidence as to who had made the repair, it appears permissible to infer that the sellers had done so. The buyer testified that she had not made or ordered any repairs to the pool prior to the expert's inspection. The sellers were the only previous owners of the pool. However, even if this inference that the sellers had repaired a crack which reappeared after the sale is accepted as fact, it was not evidence which could properly have supported the conclusion that the sellers at the time of the sale knew of "facts materially affecting the value of the property." Such a conclusion could be reached only by a further inference, based upon the above referenced inference, that the sellers knew that the crack they repaired constituted a problem materially affecting the value of the pool which was likely to reoccur or continue to the time of the sale.
Although there is a general evidentiary rule against pyramiding one inference upon another, an exception to this rule with reference to the first inference is that "when no contrary reasonable inference may be indulged, such inference is elevated for the purpose of further inference to the dignity of an established fact." Voelker v. Combined Insurance Company of America, 73 So.2d 403, 407 (Fla. 1954). See also Benson v. State, 526 So.2d 948, 952-55 (Fla. 2d DCA), rev. denied, 536 So.2d 243 (1988). In this case the inference that the sellers had previously repaired the crack in the pool can be accepted as a fact since, as we have indicated, no contrary reasonable inference appears. However, the critical issue is whether the next inference (that the *258 sellers knew at the time they made the repair that the crack constituted a major problem likely to reoccur or continue) can be elevated to the status of a fact to support the final inference (that the sellers knew at the time of the sale that a problem materially affecting the value of the pool existed).
We now first explain why that final inference can only be an inference (thus necessitating a Voelker analysis of the next underlying inference) and not a fact. There was no direct evidence that the sellers knew at the time of the sale that there was any defect in the pool which materially affected the value of the property. In fact, the buyer's own testimony indicated that the pool appeared to be in satisfactory condition at that time. There was no evidence that repeated repairs had been made, which might have indicated that the sellers were aware that the problem continued to exist. The evidence did not show when the prior repair was made. There may have been an inference that the repair had been made when the sellers repainted the pool and replaced some of the tiles about two years before the sale. (Since the evidence did not show repeated repairs or continuing problems with the pool, a permissible inference from this evidence which is contrary to the buyer's position may be that the sellers had had no reason to believe that a problem with the pool existed at the time of the sale.)
Accordingly, to support the inference that at the time of the sale the sellers knew of a defect materially affecting the value of the property, one must under the Voelker test elevate to established fact the above-referenced inference that at the time of the repair the sellers knew that the crack constituted a problem materially affecting the value of the property which was likely to reoccur or continue, such as a structural, as contrasted with a cosmetic, problem. However, that inference does not rise to the level of a fact because there exists another reasonable inference in that regard. That is, the evidence does not exclude another reasonable inference that at the time the sellers repaired the crack, they reasonably believed the crack was only a minor, or cosmetic, flaw and was not indicative of a major defect or a continuing or reoccurring problem. The buyer might argue that the prior crack was so wide that the sellers should have known of the seriousness of the problem. However, there was no evidence establishing the width of the crack then, as contrasted with the width of the grout used to repair the crack which might well have covered not only the crack itself but some of the original grout.
The bottom line of this analysis is that since the inference that the sellers were aware at the time of their repair that the crack constituted a problem materially affecting the value of the property does not rise to the level of a fact, it cannot support the final requisite inference that the sellers knew of a fact materially affecting the value of the property.
Also, as to the other above-referenced defect, there was no direct evidence to show that the sellers had been aware of the problem with the pool paint. There might arguably, albeit questionably, have been an inference that since the effects of this problem were apparent to the buyer within two weeks after her purchase, those effects must have been noticeable to the sellers before the sale and a further inference that the sellers thereby knew of a problem materially affecting the value of the property. However, this further inference is not supported by a prior inference rising to the level of a fact. The prior inference that the effects of this problem were noticeable to the sellers before the sale does not exclude the reasonable inference that those effects, consistent with the testimony of the pool maintenance employee, were not noticeable to the sellers.
Accordingly, the buyer did not provide sufficient evidence to support the final judgment against the sellers under the liability requisites of Johnson and the evidentiary requisites of Voelker.
Johnson does not convert a seller of a house into a guarantor of the condition of the house. As we have said, to prove a cause of action under Johnson, a buyer of a house must prove the seller's knowledge *259 of a defect which materially affected the value of the house. While knowledge in this regard can be proven by circumstantial evidence, Voelker, 73 So.2d at 405-06, it must nevertheless be proven by competent, sufficient evidence which, as we have explained, did not exist here.
Reversed and remanded for entry of judgment in favor of defendants.
CAMPBELL, C.J., and PARKER, J., concur.