SMITH, Judge.
Appellant, plaintiff below, seeks reversal of summary judgment entered in favor of the appellee, one of the defendants in a medical malpractice suit. We reverse.
During the course of his duties as an Escambia County Deputy Sheriff, appellant’s husband was shot in the chest, abdomen and buttocks. Emergency surgery *730 was performed at Baptist Hospital, following which Officer Streeter was placed in intensive care. An endotracheal tube was inserted into the officer’s trachea to assist his breathing. At some point afterward, the endotracheal tube became blocked, and the appellee, a pulmonary specialist, was called in to assist. The appellee replaced the tube after a paralytic drug, Pavulon, was administered at the instruction of another physician, Dr. Tugwell. Unfortunately, the officer subsequently died. The next day his body was taken to another hospital where an autopsy was performed by Dr. McConnell, the pathologist, who found the endotracheal tube in the deceased’s esophagus, rather than in the trachea. It was also established that the bulb at the end of the tube was inflated, and that the tube was tied in place by a string around the patient’s neck.
In a second amended complaint, appellant sued Baptist Hospital, Dr. Tugwell and the appellee. In the amended complaint, appellant alleged that the appellee negligently performed his professional duties in failing to promptly and properly evaluate the patient’s respiratory distress, to properly diagnose the cause of respiratory distress, and to properly treat the distress. Appellant further alleged that the appellee was negligent when he incorrectly inserted the endotracheal tube into the patient’s esophagus knowing the patient would be unable to breath without a properly inserted tube because of the administration of Pavulon.
The appellee filed a motion for summary judgment, in which it was argued that no genuine issue of fact existed and, as a matter of law, appellee was entitled to a judgment in his favor. More specifically, appellee argued that appellant’s expert medical witness, Dr. Joseph LoCicero, testified during deposition that the appellee did not breach the standard of medical care, and that the wounded officer’s condition was “irreversible” by the time the endotra-cheal tube was replaced, so that even if the tube was incorrectly inserted, it made no difference.[1] Further, appellee argued that appellant had failed to submit any competent evidence of negligent care which proximately caused the death of Officer Street-er.
Appellant thereafter filed the sworn affidavit of Dr. LoCicero in which the affiant explained that at the time of his deposition, he had been asked to assume, and had assumed, that the endotracheal tube was properly placed, but “[i]f DR. BONDU-RANT inserted the endotracheal tube into the esophagus instead of into the trachea, that placement into the esophagus breached the acceptable standard of care required of him under these circumstances.” Dr. LoCicero’s affidavit further stated that if the tube were improperly placed and remained in the esophagus during the resuscitation process, “this improper placement would assure his death.” Appellant also filed the affidavit of Dr. Boysen, who opined that “if” the tube was incorrectly placed in the esophagus by Dr. Bondurant, rather than the trachea, this would constitute a failure to meet the accepted standard of care; and further, that such failure to meet the accepted standard of care caused or substantially contributed to the patient’s death “due to hypoxia due to en-dotracheal tube obstruction,” and that the patient’s death was preventable by proper intervention and by properly meeting the accepted standard of care.
Following a hearing, the trial court granted appellee’s motion for summary judgment. The trial court stated in its order that Dr. LoCicero’s deposition “unequivocally” established his expert opinion that Dr. Bondurant did not breach any standard of care. The trial court stated further that the subsequently filed affidavit was “belied” by the record and should not be considered under the authority of Williams v. Duggan, 172 So.2d 844 (Fla. 1st DCA 1965). As for the affidavit of Dr. Boysen, also submitted by appellant, the trial court found that it contained only an hypothesis not independently established by other facts of record. The trial court *731 found the Boysen affidavit insufficient by itself to support a claim of negligence in opposition to appellee’s summary judgment motion.
On appeal, appellant argues that a question of fact remains whether the appellee’s actions breached the standard of care due the deceased officer, and if there was a breach, whether it at least contributed to the officer’s death. The appellee responds by asserting that appellant’s theory of liability relies upon inferences which cannot be lawfully drawn from the facts. According to appellee, appellant’s theory of liability requires one inference — that the tube was in the esophagus before death — to be placed on top of another inference — that the tube was placed and left there by the appellee. Such a stacking of inferences is not permitted, appellee maintains, unless the initial inference “can be elevated to the dignity of an established fact because of the presence of no reasonable inference to the contrary,” quoting Commercial Credit Corp. v. Varn, 108 So.2d 638, 640 (Fla. 1st DCA 1959). Appellee argues that the more reasonable first inference is that the endo-tracheal tube was properly placed but became dislodged and migrated into the esophagus after death. We are not persuaded that appellee’s “inference upon inference” argument is dispositive of the issues in this case. In fact, appellant relies upon only one inference, that is, that because the tube was found in the patient’s esophagus after death, it is reasonably in-ferable that it was placed by mistake in the esophagus by appellee.
Appellee’s reliance upon Voelker v. Combined Insurance Company of America, 73 So.2d 403 (Fla.1954), Gaidymowicz v. Winn-Dixie Stores, Inc., 371 So.2d 212 (Fla. 3d DCA 1979), Girdley Construction Company v. Ohmstede, 465 So.2d 594 (Fla. 1st DCA 1985), and Allstate Insurance Company v. Bandiera, 512 So.2d 1082 (Fla. 4th DCA 1987), review denied, 520 So.2d 583 (Fla.1988), is misplaced. None of these cases concern an appeal from a summary judgment. Voelker was a consolidated appeal from final judgments entered by the trial court upon defendant’s motion for a directed verdict after entry of final judgment based on the jury’s verdict. Gaidy-mowicz was an appeal of a directed verdict in favor of a defendant at the close of the plaintiff’s case in a negligence action. Girdley was an appeal from an order awarding death benefits in a workers’ compensation case. Finally, Allstate Insurance Company was an appeal from a jury verdict. The case before us differs from each of the above-cited cases in one important respect, that is, the plaintiff in each of those cases had been given an opportunity at trial to prove his case, but was unable to do so. A movant against whom summary judgment is sought is not required to prove his case at that stage of the proceedings. See Chelton v. Tallahassee-Leon County Civic Center Authority, 525 So.2d 972 (Fla. 1st DCA), rev. den., 534 So.2d 402 (Fla.1988). It is well established that a summary judgment should be granted “cautiously,” Davis v. Lyall & Lyall Veterinarians, P.A., 506 So.2d 1072 (Fla. 5th DCA), rev. den., 513 So.2d 1062 (Fla.1987), and that reasonable inferences should be resolved against a movant for summary judgment, Moore v. Morris, 475 So.2d 666 (Fla.1985), and Wills v. Sears, Roebuck and Company, 351 So.2d 29 (Fla.1977).
In the case before us, two facts are established by direct and undisputed evidence: (1) that Dr. Bondurant placed the second endotracheal tube in the patient, and (2) when examined after death, the tube was found inserted in the patient’s esophagus. There is direct evidence — ap-pellee’s own testimony — that the tube was properly placed in the trachea by appellee, and this is supported by observations made by others present. This direct evidence, however, is subject to a credibility determination by the trier of fact, since the doctor’s own self-serving statement must be weighed in the light of the inferences which may be drawn from the other facts, including the direct evidence (fact No. (2) above), which tends to refute the evidence of proper placement. It is true, as appellee urges, that there is additional circumstantial evidence tending to support Dr. Bondu-rant’s statement as to proper placement, such as the observation of lung movement *732 by another physician during open chest heart massage,[2] and other opinion evidence indicating no improper placement of the tube. It must be observed that the explanation offered by appellee as to how the tube became lodged in the patient's esophagus, assuming it was properly placed in the trachea in the first instance, relies entirely on circumstantial evidence. Appellee argues that it is reasonably inferable that the tube became dislodged from the trachea and reinserted itself into the esophagus during manipulation of the patient while administering CPR, or possibly after death when the deceased was being transported to another hospital for an autopsy. These explanations do not offer any conclusive answer to the question, however, since they establish mere “possibilities” of how the tube became misplaced. Opposed to these “possibilities” is the direct evidence that the tube was still tied in place with a string around the patient’s neck at the time of the autopsy, and that the bulb at the end of the tube was still inflated. Moreover, it is apparent that the likelihood of the tube becoming dislodged from the trachea and inserting itself into the esophagus, under any given set of circumstances, is itself a question uniquely within the knowledge and experience of medical experts. Yet, we find an absence of conclusive expert testimony one way or the other on this issue in the record before us.
It appears, therefore, that the circumstances established by appellant’s evidence are susceptible of a reasonable inference supporting the claim of negligence, and the circumstances are also susceptible of reasonable inferences which refute the claim. In this situation, a jury issue is presented, as explained in Voelker, 73 So.2d at 406:
[I]f the circumstances established by the evidence be susceptible of a reasonable inference or inferences which would authorize recovery and are also capable of an equally reasonable inference, or inferences, contra, a jury question is presented.
We are not unmindful of the further admonition in Voelker, that if none of the inferences on one side “accords with logic and reason or human experience,” while on the other hand “an inference which does square with logic and reason or human experience” is deducible from the evidence, the question is not for the jury “but is one of law for the court.” Id. at 406. Although we concede a close question is presented in the case before us, we find that the trial court abused its discretion in granting summary judgment.
The trial court below erred in concluding, on the authority of Williams v. Duggan, supra, and Elison v. Goodman, 395 So.2d 1201 (Fla. 3d DCA 1981), that Dr. LoCice-ro’s affidavit could not be considered. These cases reaffirm the rule established in Ellison v. Anderson, 74 So.2d 680 (Fla. 1954), that a party is not permitted to repudiate a previously asserted position simply to avert summary judgment. In Williams, the plaintiff in a tort action had testified in deposition that the extension ladder on which he was descending got caught by the wind, forcing him to fall. At trial, the plaintiff testified that he fell because the ladder was defective, or because a fellow employee had failed to hold the ladder steady as he descended. The plaintiff was unable to explain the conflicting testimony at trial. Citing the rule established in Ellison v. Anderson, supra, the Williams court affirmed the directed verdict entered in the defendant’s favor. .In Elison v. Goodman, supra, cross-claimants for damages for construction defects at a new home stated during deposition that they were on notice of the defects four years before suit was filed. Summary judgment was granted, since the cross-claim was barred by the governing statute of limitations based upon the admission of notice of the defects. Cross-claimants filed an affidavit contradicting the deposition testimony concerning the date of discovery of the defects so as to bring the action within the statute of limitations. Citing the rule of Ellison v. Anderson, supra, however, the Elison v. Goodman court affirmed the *733 summary judgment. In the instant case, Dr. LoCicero’s deposition testimony and his affidavit are not in direct contradiction; thus, the rule of Ellison v. Anderson has no application.
Our review convinces us that in rendering summary judgment the trial court necessarily engaged in a weighing of the evidence in order to arrive at a conclusion as to how and when the endotracheal tube became placed in the patient’s esophagus rather than in the trachea. This issue, as well as the additional factual issue as to the cause of death, are proper for resolution only at trial, at which time the court may appropriately weigh and consider all the evidence and reasonable inferences therefrom in deciding whether the evidence is sufficient to submit the case to the jury.
Accordingly, the summary judgment is REVERSED and the cause is REMANDED for further proceedings.
MINER, J., and THOMPSON, FORD L. (Retired), Associate Judge, concur.

. Dr. Bondurant stated in his deposition, however, that he could not say that Streeter was or was not beyond help when he replaced the en-dotracheal tube.

. Even this is not conclusive, however, for as several doctors observed, it is possible to see lung movement indicating ventilation even when the tube is placed in the esophagus.