WEBSTER, Judge.
Appellant, defendant in the trial court, seeks review of a final judgment, entered pursuant to a jury verdict, awarding dam *768 ages to appellee, as personal representative of her late son’s estate. Appellant argues, among other things, that the trial court should have granted its motion for a directed verdict because appellee presented no evidence from which one could reasonably conclude that appellant had sold or otherwise furnished any alcoholic beverage to appellee’s son (Richard). We agree. Accordingly, we reverse.
As personal representative of Richard’s estate, appellee filed a 2-count complaint against appellant. Count I alleged that appellant, a business licensed to sell alcoholic beverages, negligently served alcoholic beverages to Richard, whom appellant either knew or should have known was a minor; that, as a result of appellant’s negligence, Richard became intoxicated and got into a fight with a patron of appellant; and that, as a result of injuries sustained during the fight, Richard died. Count II alleged that appellant “willfully and unlawfully” sold alcoholic beverages to Richard, in violation of sections 562.11(1) and 768.-125, Florida Statutes; and that such act was “the direct and proximate cause of” Richard’s death. Appellant responded with an answer which generally denied the material allegations of the complaint.
The jury returned a verdict in favor of appellee on both counts of the complaint. After the verdict had been returned, the trial court granted that portion of appellant’s motion for judgment in accordance with its motion for directed verdict addressed to Count I, and denied that portion addressed to Count II. Appellee has not taken a cross appeal from the trial court’s order entering judgment in favor of appellant on Count I. Accordingly, we address only whether, viewing the evidence and all reasonable inferences to be drawn therefrom in a light most favorable to appellee, there was any evidence to support a finding that appellant “willfully and unlawfully” sold or otherwise furnished alcoholic beverages to Richard, as alleged in Count II. See, e.g., Yanks v. Barnett, 563 So.2d 776 (Fla. 3d DCA), review denied, 576 So.2d 295 (Fla.1990); Hooper v. Barnett Bank of West Florida, 474 So.2d 1253 (Fla. 1st DCA1985), aff'd, 498 So.2d 923 (Fla. 1986); R.A. Jones & Sons, Inc. v. Holman, 470 So.2d 60 (Fla. 3d DCA1985), review dismissed sub nom. Ford Motor Co. v. R.A. Jones & Sons, Inc., 482 So.2d 348 (Fla.1986).
Appellee correctly recognizes that, in order to recover on her claim that appellant violated sections 562.11(1) and 768.125, Florida Statutes, she was required to prove that appellant “willfully and unlawfully” sold or otherwise furnished alcoholic beverages to Richard. Section 768.125, Fla.Stat. (1989). Appellee concedes that there is no direct evidence that appellant sold or otherwise furnished any alcoholic beverage to Richard. However, she argues that the circumstantial evidence was sufficient to permit the jury to reach such a conclusion. We are unable to agree.
The medical examiner who performed the autopsy on Richard testified that Richard appeared to be his stated age of nineteen; but that Richard could have passed for twenty-two or twenty-three. The medical examiner also testified that he was told by the hospital to which Richard had been taken that, upon admission (at approximately midnight), Richard had “a .15 blood alcohol level.” From this latter testimony, appellee argues that, because the evidence established that Richard had been in appellant's place of business (the Silver Dollar) for “well in excess of five (5) hours” immediately before the fight, the jury could reasonably infer that Richard had been served alcoholic beverages while at the Silver Dollar. However, as appellant correctly points out, there is no evidence from which one might reasonably conclude that Richard had been in the Silver Dollar for “well in excess of five (5) hours” immediately before the fight which resulted in his death.
Most of the evidence presented at trial was undisputed. It included testimony that Homer Ingler arrived at the Silver Dollar “shortly after” 6:00 p.m. When he arrived, he saw Richard (whom he had never before seen), playing pool. Ruthene Hughes, the owner of the Silver Dollar, testified that she arrived at approximately 7:00 p.m.; saw Richard (whom she had never before seen) playing pool with Ingler; *769 asked Richard for identification; and, when Richard was unable to produce any identification, told Richard to leave. Hughes said that Richard did not appear to have been drinking.
According to Hughes, after “a couple of hours,” Richard returned, with identification indicating that he was twenty-three. Richard again played pool with Ingler. (In-gler testified that he and Richard played a total of “[flour or five” games during the evening.) Hughes testified that “about 15 minutes” after Richard had returned, Richard and Ingler “started arguing," and Hughes “asked them to leave.” Ingler testified that he and Richard went outside and “argued,” but they soon agreed “to leave each other alone” and “went back in and decided to play some more pool.” After some thirty to forty-five minutes had passed, Richard and Ingler again began to argue, and Hughes told them to leave, and not to return. Richard and Ingler again went outside, after which the fight which resulted in Richard’s death occurred. According to the evidence, the fight took place at approximately 11:00 p.m.
Nobody testified that Richard had been seen drinking any alcoholic beverage at any time during the fateful evening. However, the uncontradicted evidence did establish that, in the past, appellee had permitted Richard to drink alcoholic beverages at home; that Richard’s home was within walking distance of the Silver Dollar; and that Richard had been known to drink alcoholic beverages behind a store owned by a friend of appellee’s, which was located across the street from the Silver Dollar.
In a civil case, an essential fact may be established by circumstantial evidence. However, to do so, the inference relied upon as pointing to the fact sought to be established must outweigh all reasonable inferences to the contrary. Shepherd v. Finer Foods, Inc., 165 So.2d 750 (Fla.1964); Tucker Brothers, Inc. v. Menard, 90 So.2d 908 (Fla.1956); Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla.1954); Diamond v. Rosenfeld, 511 So.2d 1031 (Fla. 4th DCA1987), review denied, 520 So.2d 586 (Fla.1988); Girdley Construction Co. v. Ohmstede, 465 So.2d 594 (Fla. 1st DCA1985). In this case, the inference relied upon by appellee does not outweigh all inferences to the contrary which might reasonably be drawn from the evidence.
There is no dispute about the fact that, when he was admitted to the hospital (at approximately midnight), Richard had “a .15 blood alcohol level.” However, no evidence was offered regarding either how many alcoholic beverages would have had to have been consumed to create that blood alcohol level, or when the alcoholic beverages would have had to have been consumed. Moreover, although appellee argues that the evidence established that Richard “had been in the Silver Dollar ... for well in excess of five (5) hours” immediately before the fight, as we have previously pointed out, the evidence does not establish that Richard had been in the Silver Dollar for a period of time remotely approaching five hours immediately before the fight. On the contrary, the evidence establishes only that, between approximately 6:00 p.m. and approximately 11:00 p.m., Richard was at the Silver Dollar, playing pool, for about two hours. It is undisputed that Richard left the Silver Dollar at approximately 7:00 p.m., and that he did not return for “a couple of hours.” Moreover, nobody was able to testify that Richard remained in the Silver Dollar continuously while he was there. Likewise undisputed were the facts that Richard was permitted to consume alcoholic beverages at his home, which was within walking distance from the Silver Dollar; and that Richard had been known to consume alcoholic beverages across the street from the Silver Dollar, behind appellee’s friend’s store.
Considering all of the undisputed facts, we conclude that the inference that Richard was served alcoholic beverages while at the Silver Dollar does not outweigh all other inferences which might reasonably be drawn. On the contrary, given the undisputed facts, we conclude that it is more reasonable to infer either that Richard periodically adjourned to the rear of appellee’s friend’s store across the street to consume *770 alcoholic beverages; or that, before returning to the Silver Dollar after having left at approximately 7:00 p.m., Richard went to his home to consume alcoholic beverages; or both. Accordingly, the trial court should have granted appellant’s motion for judgment in accordance with its motion for directed verdict as to Count II. See Southland Distributing Co. of St. Petersburg v. Vernal, 497 So.2d 1240 (Fla. 2d DCA1986), review denied, 504 So.2d 768 (Fla.1987). A contrary result would effectively sanction a jury verdict based upon nothing more than rank speculation.
We reverse and remand, with directions that the trial court enter judgment in favor of appellant on the claim made in Count II of appellee's complaint. In light of this disposition, we find it unnecessary to address the several other issues raised by appellant.
REVERSED and REMANDED, with directions.
WOLF and KAHN, JJ., concur.