404 So.2d 377 (1981)
Sharon B. WHITEHEAD, As the Personal Representative of the Estate of Jimmy Ray Whitehead, Appellant,
v.
Clayton E. LINKOUS, M.D., and Sacred Heart Hospital of Pensacola, Inc., Appellees.
No. WW-299.
District Court of Appeal of Florida, First District.
September 24, 1981.
Rehearing Denied October 28, 1981.
*378 Antony E. Fiorentino, Pensacola, for appellant.
Danny L. Kepner of Shell, Fleming, Davis & Menge, Pensacola, and Charles C. Sherrill of Sherrill, Moore & Hill, Pensacola, for appellees.
LILES, WOODIE A. (Retired), Associate Judge.
At approximately 7:45 P.M. on May 26, 1975, Jimmy Ray Whitehead was brought by ambulance to the Sacred Heart Hospital's emergency room in Pensacola, Florida. Upon his arrival, he was examined by the defendant, Dr. Clayton E. Linkous, who determined that the deceased was suffering from an overdose of Valium and Darvocet taken in conjunction with a large amount of beer in an apparent suicide attempt. Dr. Linkous directed that Whitehead be orally given an ounce and one-half of Ipecac, a medicine to induce vomiting. The Ipecac was administered at approximately 8:00 P.M. by a registered nurse, Sandra Morgan, an employee of the Sacred Heart Hospital. When she gave the Ipecac to Whitehead, she advised him and his wife, who was present in the cubicle, that she wanted Whitehead to drink water. She further instructed the wife to make Whitehead drink the water. Both his wife and a friend, Jack Hurry, were unable to induce Whitehead to drink any water. Hurry eventually left the emergency room, but before doing so advised Nurse Morgan that the deceased was not drinking water. He also noted that, when he left the emergency room, Whitehead appeared to be unconscious.
Approximately thirty-eight minutes later, Morgan walked by Whitehead's cubicle in the emergency room and noted that his color had changed. She immediately reported to the nurse's station that someone needed to check Whitehead, for his color "didn't look right." When Morgan advised the nursing station that Whitehead needed to be checked, Dr. Linkous, Anita Wilson, a second registered nurse, and Sandra Hartley, a unit secretary, were in the station. Sandra Hartley then left the station on an errand. Upon returning, she passed by Whitehead's cubicle and noted that his color was much darker than when he first came in. She, too, advised Dr. Linkous of the color change. He in turn told her to request Nurse Wilson to do the gastric lavage. She noted that he was less responsive and variously described his color as being "dusky or grey" and "very dusky, very dark." Upon placing her hand on his chest and stomach, she found that there was no movement. She lowered his bed, established an airway, and immediately went back to the nurse's station to ask Hartley to call a Code 3, meaning a cardiac and pulmonary arrest. The deceased was resuscitated and moved to the Intensive Care Unit of the hospital. However, he never regained consciousness and died twenty-seven days later on June 22, 1975.
Sharon B. Whitehead, the deceased's wife and personal representative of his estate, brought a malpractice suit against Dr. Linkous and the Sacred Heart Hospital. In the presentation of its case, the Estate called as an expert witness Dr. Henry Harden, an emergency room doctor practicing in Pensacola, Florida. Dr. Harden testified that, based upon the emergency room records, the hospital records, and the autopsy protocol, he believed that Mr. Whitehead's death was due to brain damage caused by lack of oxygen. He also testified that in his opinion the care received by Whitehead deviated from the standard practice in the community, because a qualified nurse saw a color change ("cyanosis") in a patient that had taken an overdose and did not immediately check to see if he required supportive care. Harden further opined that, had the deceased been checked immediately and supportive care been given immediately upon the cyanosis being observed, the deceased would be alive today. The defense called no witnesses.
In charging the jury, the trial judge gave the following instructions, which were timely objected to by the Estate:
On the first defense the issues for your determination are whether Jimmy Ray *379 Whitehead intentionally acted in such a way that his actions were a contributing, legal cause of his death.
On the second defense the issues for your determination are whether Jimmy Ray Whitehead was himself negligent and, if so, whether such negligence was a contributing, legal cause of the injury or damage complained of.
If the greater weight of the evidence does not support the defenses of the Defendant and the greater weight of the evidence does support the claim of the Plaintiff, then your verdict should be for Plaintiff. If, however, the greater weight of the evidence shows that the decedent, Jimmy Ray Whitehead, and one or both of the Defendants were negligent and that the negligence of each contributed as a legal cause of the decedent's death, you should determine what percentage of the total negligence of all parties to this action is chargeable to each.
After weighing the evidence, the jury returned a verdict of $215,000 to Sharon Whitehead, the deceased's wife, and his two children. It also found that Dr. Linkous was 10% negligent, that Sacred Heart Hospital was 23% negligent, and that the decedent himself was 67% negligent. Pursuant to these findings, the trial court entered a final judgment in the amount of $70,950.
A remote condition or conduct which furnishes only the occasion for someone else's supervening negligence is not a proximate cause of the result of the subsequent negligence. See e.g., McClain v. McDermott, 232 So.2d 161 (Fla. 1970). Both Dr. Linkous and the hospital assert that the decedent's acts in attempting to commit suicide were a contributing legal cause of his death and thus subject to the preceding instruction regarding the comparative negligence to the decedent. We think this argument confuses the difference between a contributing cause in fact and a contributing legal or proximate cause. While the latter is subject to an instruction on comparative negligence, the former certainly is not. The Second District Court of Appeal has succinctly stated the applicable standard:
In short, conduct prior to an injury or death is not legally significant in an action for damages like this, unless it is a legal or proximate cause of the injury or death  as opposed to a cause of the remote conditions or occasion for the later negligence. So it is with conduct of a patient which may have contributed to his illness or medical condition, which furnishes the occasion for medical treatment. That conduct simply is not available as a defense to malpractice which causes a distinct subsequent injury  here the ultimate injury, wrongful death.
Matthews v. Williford, 318 So.2d 480, 483 (Fla. 2d DCA 1975). Applying this analysis to this case, it is clear that Whitehead's actions in consuming the Valium, Darvocet, and beer furnished the occasion for Dr. Linkous' and the hospital's later negligence in failing to properly treat him. This conclusion is predicated upon the uncontroverted testimony of Dr. Harden who testified that but for the hospital's and the doctor's negligent treatment of the deceased, he would be alive today. Since Whitehead's death would not have occurred "but for" the negligent acts or omissions of the hospital and the doctor, those acts and omissions must be deemed the cause of the injury. See Fellows v. Citizens Savings & Loan Association of St. Lucie County, 383 So.2d 1140 (Fla. 4th DCA 1980); Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977). Stated differently, any conduct on Whitehead's part before he entered the hospital which contributed to his cardiac and pulmonary arrest and subsequent death was not a proximate, legal cause of the damages sought in this case. Accordingly, we find that the trial court erred in submitting the instruction on comparative negligence to the jury over the prior and timely objection of counsel. See Borenstein v. Raskin, 401 So.2d 884, (Fla. 3d DCA 1981). Counsel for the appellees also argues that the instruction on comparative negligence was still proper because Whitehead supposedly was uncooperative and hostile during his medical treatment and, in fact, refused to drink *380 water per the doctor's instructions, thus proximately contributing to his own demise. The record, however, does not support such a theory. Dr. Linkous did testify that Whitehead initially refused to take the Ipecac. However, upon being informed that the Ipecac would be administered by tube, Whitehead agreed to take it and in fact did do so. Dr. Linkous also testified that a few minutes later he told Whitehead to drink water and that Whitehead did, in fact, drink water. His wife subsequently informed one of the nurses that she was unable to get her husband to drink water, that she poured some water into his mouth but he did not swallow it because he was unconscious. Further, as noted previously, witness Hurry also informed the nurse, prior to his departure, that Whitehead appeared to be unconscious. Therefore, the record does not even support the appellee's contention that Whitehead contributed to his own death after being admitted to the hospital. Accordingly, the finding of comparative negligence against Jimmy Ray Whitehead is reversed, and the original full amount of damages, $215,000, is reinstated. Since the comparative negligence of Dr. Linkous and the hospital is yet to be considered pursuant to proper instructions, we remand this cause for a limited trial on the issue of Dr. Linkous' and the hospital's relative negligence.
We have considered the Estate's other points on appeal and find them to be without merit.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
SHAW and JOANOS, JJ., concur.