PER CURIAM.
This is an appeal from a final judgment for the plaintiffs, Mary M. Wright and Ronald Wright, in a medical malpractice action. The defendants claim error in the trial court’s decision not to submit the issue of comparative negligence to the jury. We agree and reverse.
In addition to denying negligence in their care of Mary Wright, the defendants alleged that Mrs. Wright was comparatively negligent in not following medical advice to have surgery immediately upon diagnosis by other physicians of the critical nature of her condition. The question is whether there was evidence presented at trial demonstrating neglect on the part of the plaintiff-patient which contributed to causing her subsequent disabling condition.
This court has held that delay in following medical advice may constitute comparative negligence on the part of the plaintiff. See e.g., Kelman v. Motta, 564 So.2d 147 (Fla. 4th DCA 1990). See also Beisel v. Lazenby, 444 So.2d 953 (Fla.1984); Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla.1984). In addition, of course, a directed verdict should not be granted on an issue unless there is no evidence in favor of the non-moving party. Moisan v. Frank K. Kriz, Jr., M.D., P.A., 531 So.2d 398 (Fla. 2d DCA 1988).
Appellants rely on the testimony of several physicians that Mrs. Wright should have agreed to immediate surgery and that the delay was responsible in part for her subsequent condition. Appellants assert that throughout the medical testimony, both plaintiff and defense, there was extensive discussion concerning the seriousness of the plaintiff’s condition and the need for immediate remedial treatment.
The following excerpts of testimony are cited. Dr. Gary Gieseke, the neurosurgeon who treated appellee and performed the surgery, testified:
Q. [D]id you tell her that she needed a myelogram right away?
A. Yes.
⅜ # ⅜ # *
Q. And the reason it wasn’t done right away is that Mrs. Wright was hesitant ...?
A. Yes.
Q. If it had been done right away, it would have been done ... February 5th?
*674 A. Yes. ...
$ * * * * *
Q. And did you tell her that the surgery was needed urgently?
A. Yes.
⅜ * * * * *
Q. If ... the myelogram had been done on February 5th as you had suggested, when would the surgery have been performed?
A. February 6th.
The questioning continued:
Q. In fact, the longer you leave this condition before intervention, the greater the chance that it will be permanent, is that correct?
A. Probably so.
In addition, Dr. Noble David, a witness for the defense, testified:
Q. Do you have an opinion within a reasonable degree of medical probability as to what the effect of the delay in surgery from February 4th to February 11th was on the ultimate outcome of Mrs. Wright?
A. Well, I think that the longer the pressure upon that particular set of nerves ... is kept up, the slower and less completely one could expect the recovery to be of those bladder functions once it’s removed.
Finally, another witness, Dr. Dale K. Johns, called by the defense, opined:
Q. Do you have an opinion within a reasonable degree of medical probability as to what the effect of the delay in surgery from February 4th to February 11th was on Mrs. Wright’s ultimate outcome?
A. Well I ... think that ... it’s very likely that ... it destroyed any real chance that she had of getting a really good result.
We believe the evidence set out above was sufficient to entitle the appellants to a jury resolution of the claim of comparative negligence. While the various opinions expressed may not have been precise as to the quantitative effect on Mrs. Wright’s medical outcome, they were sufficient for a jury to possibly conclude that Mrs. Wright was informed of the need for immediate action, and that she unreasonably delayed, to her own detriment, in approving that action.
We reject appellants’ claims that the evidence of their own neglect was insufficient to raise a jury question or that the trial court erred in allowing an amendment of Mr. Wright’s claim for damages. The other issues raised are rendered moot by our decision.
Accordingly, we reverse and remand for a new trial in accord with the above.
ANSTEAD, HERSEY and FARMER, JJ., concur.