GODERICH, Judge.
The defendant, Dr. John Nordt, appeals from an adverse final judgment and from the denial of his motion for a new trial and/or a remittitur. The plaintiff, Mary Wenck, cross-appeals from that portion of the amended final judgment finding her comparatively negligent. We affirm all aspects of the amended final judgment.
In November 1988, the plaintiff broke her right leg. She was taken to the emergency room at Doctor’s Hospital where she was treated by the defendant for a major fracture of the two bones between the knee and ankle. The defendant placed a cast on her leg that reached from her foot to her groin. The defendant was concerned that the plaintiff could be at risk for developing either throm- *451 bophlebitis[1] or compartment syndrome.[2] Although the defendant knew that the plaintiff was at high risk for developing thrombophle-bitis, he did not treat her with anti-coagulant drugs because he feared that those drugs might increase the bleeding at the fracture site thereby increasing the plaintiffs risk of developing compartment syndrome. Instead, he prescribed elevation of her legs and physical therapy.
Throughout plaintiffs stay at the hospital, she repeatedly complained of pain and swelling; however, neither the defendant, the nurses, nor the physical therapists saw any signs of thrombophlebitis. On December 1, 1988, the plaintiff was released from the hospital and ordered to continue physical therapy. Frequently, she refused the therapy, claimed that it was uncomfortable, and complained of pain and swelling. The defendant examined her twice after her release, and although she complained of pain, the defendant failed to see any symptoms or to diagnose any problem.
On New Year’s Day, the plaintiff called the defendant because she was feeling extremely ill and had swelling in both legs. Dr. Lazza-rin, who was covering for the defendant on the holiday weekend, returned her call and instructed her to go to the hospital immediately. At the hospital, Dr. Lazzarin turned her over to the care of an internist, Dr. Pabalan, who diagnosed her as having throm-bophlebitis with clots in both legs up both sides of her body to just below her kidneys. He consulted with Dr. Smiley, a surgeon, who recommended putting in a Greenfield filter to prevent blood clots from going to her lungs. Dr. Pabalan began anti-coagulent therapy, and Dr. Smiley inserted the filter. The plaintiff remained in the hospital for ten days.
The plaintiffs action for malpractice against the defendant followed and was based on the defendant’s three-fold negligence in failing to prevent the onset of thrombophlebitis, failing to diagnose the con.dition as it progressed, and failing to treat the condition after symptoms manifested.
At trial, the plaintiff called two experts. Dr. Charles, an orthopedic surgeon, testified that, with plaintiffs history, if not treated appropriately, she had a better than 90% chance of developing thrombophlebitis. In his opinion, the defendant’s failure to call in a hematologist or other specialist to evaluate or treat her potential for developing throm-bophlebitis fell below the standard of care. Next, Dr. Levine, a vascular surgeon, testified as to whether the anti-coagulant therapy would have prevented the plaintiffs thrombosis. Dr. Levine stated, “I think effective preventative anti-coagulation would have substantially lowered the probability, number one, that the deep venous thrombosis would have occurred at all; and, number two, that it would have been as extensive as this one was.”
With regard to the issue of damages, Dr. Pabalan testified that the plaintiff was currently under his treatment and that she would probably have to remain on anti-coagulant drugs for the rest of her life. He also stated that she would have to attempt to avoid any trauma that could lead to bleeding. Lastly, he explained that the plaintiff suffers from venous stasis, a condition of impeded blood flow caused by the thrombosis and the Greenfield filter, that results in swelling in her legs when she stands for extended periods of time. The plaintiff testified that she experiences pain and swelling in her legs when sitting or standing, and that she is unable to walk more than a short distance without having to sit and elevate her legs. Several witnesses testified as to the change in plaintiffs quality of life.
After the conclusion of the evidence, the jury returned a verdict against the defendant. The jury found the defendant 55% negligent and the plaintiff 45% comparatively negligent. The jury awarded $17,000.00 for past medical expenses, $127,500.00 for past pain and suffering, and $624,000.00 for future *452 pain and suffering, for a total of $768,500.00. The defendant then moved for a new trial on the basis that the plaintiff had failed to prove causation and that the verdict was against the manifest weight of the evidence. The defendant also moved for a new trial and/or a remittitur on the basis that the damages were excessive. The motions for a new trial and/or a remittitur were denied, except to the limited extent of a remittitur of $2.20 to conform to the amount of medical bills introduced at trial. The court entered a final judgment for the plaintiff in the amount of $422,672.80.
The defendant raises two points on appeal that merit discussion. First, the defendant contends that the trial court abused its discretion by denying defendant’s motion for a new trial where the plaintiff failed to present sufficient evidence of causation. The defendant further argues that the plaintiff failed to prove that the defendant’s negligence “more likely than not” caused the thrombophlebitis in accordance with Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla.1984). We disagree.
In Gooding, the Florida Supreme Court set out the standard for causation in a medical malpractice case:
To prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant’s breach of the standard of care, and that said breach proximately caused the damages claimed....
In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiffs injuries.
Gooding, 445 So.2d at 1018 (citation omitted).
In the case below, two experts testified. An orthopedic surgeon testified that, with plaintiffs history, if not treated appropriately, she had a better than 90% chance of developing thrombophlebitis, and that in his opinion, the defendant’s failure to call in a hematologist or other specialist to evaluate or treat her potential for developing throm-bophlebitis fell below the standard of care. Next, a vascular surgeon testified that “effective preventative anti-coagulation would have substantially lowered the probability ... that the deep venous thrombosis would have occurred at all and ... that it would have been as extensive as this one was.” We find that this testimony presented by the plaintiff is sufficient to meet the “more likely than not” standard of causation required by Gooding. Therefore, the trial court properly denied defendant’s motion for a new trial.
Second, the defendant contends that the trial court abused its discretion by denying the defendant’s motion for a new trial and/or a remittitur where the verdict was so excessive as to indicate that the jury was influenced by passion, prejudice, or improper motive. § 768.74, Fla.Stat. (1993).
In Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla.1977), the Florida Supreme Court explained:
The correctness of the jury’s verdict is strengthened when the trial judge refuses to grant a new trial or a remittitur. The appellate court may review the trial court ruling only for an abuse of discretion.
Two factors unite to favor a very restricted review of an order denying a motion for new trial on ground of excessive verdict. The first of these is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record. The second factor is the deference properly given to the jury’s determination of such matters of fact as the weight of the evidence and the quantum of damages.
Lassitter, 349 So.2d at 627.
After a review of the record before us, we find nothing to suggest that the verdict below was indicative of the improper influences of passion and prejudice working on the jury. Consequently, there was no abuse of discretion by the trial court when it properly refused to disturb the jury’s verdict and denied the defendant’s motion for a new trial and/or a remittitur.
Lastly, with regard to the plaintiffs cross-appeal, she contends that the trial court abused its discretion by allowing the *453 defendant to present a comparative negligence defense to the jury. We disagree.
The Florida comparative fault statute specifically provides that it is applicable as a defense to actions for professional malpractice. § 768.819(4)(a), Fla.Stat. (1993). “[T]he issue of contributory negligence is ordinarily a question for the jury. It is only necessary that there be some evidence tending to show negligence on the part of the plaintiff to make a jury question.” Musachia v. Rosman, 190 So.2d 47, 49 (Fla. 3d DCA 1966).
In this ease, the defendant presented sufficient testimony tending to show negligence on the part of the plaintiff and to make the issue of comparative negligence a question for the jury. The defendant raised the issue of comparative negligence by asserting that the plaintiff violated her physician’s instructions, given in the course of treatment, and that such noncompliance with her physician’s instructions played a part in her ultimate injury. Matthews v. Williford, 318 So.2d 480, 482 (Fla. 2d DCA 1975) (citing General Hosp. of Greater Miami v. Gager, 160 So.2d 749 (Fla. 3d DCA 1964), cert. denied, 168 So.2d 145 (Fla.1964); Musachia v. Rosman, 190 So.2d 47 (Fla. 3d DCA 1966)).
Specifically, on cross-examination, the plaintiff admitted that, during her recovery, contrary to the defendant’s advice, she had not performed her physical therapy, she had not maintained her legs in an elevated position above her heart, and she had not quit smoking. Additionally, she testified that, during the last three or four days preceding her attack of thrombophlebitis, she had “just laid there” and had “no activity.” The defense also presented two experts who testified, within a reasonable medical probability, that the plaintiff did not have deep venous thrombosis when she was initially discharged from the hospital; that the plaintiffs inactivity triggered or enhanced the attack of thrombophlebitis; and that had the plaintiff followed the defendant’s instructions, remained active, and performed the prescribed physical therapy, after her discharge from the hospital, her attack of thrombophlebitis could have or would have been avoided. Admittedly, the plaintiff attempted to counter the defendant’s argument by presenting her own testimony that she was inactive and that she failed to perform the prescribed physical therapy because she felt pain, and it was uncomfortable. However, the credibility of her testimony was for the jury to determine.
We find the plaintiffs testimony on cross-examination coupled with the testimony of the defense experts was substantial, competent evidence to support the jury’s finding of comparative negligence. Therefore, the trial court properly refused to disturb the jury’s verdict finding the plaintiff 45% comparatively negligent.
We affirm.

. Thrombophlebitis occurs when clots develop in the veins of the legs that block the return of blood to the heart. This causes damage to the veins and increases the risk that a clot will break loose, travel through the bloodstream to the lungs, and cause a pulmonary embolism.

. Compartment syndrome occurs when bleeding inside an enclosed compartment of the leg causes the build up of pressure and decreases circulation to the muscles. Without treatment, the limb dies.