715 So.2d 262 (1998)
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION n/k/a Department of Environmental Protection, Appellant,
v.
CTL DISTRIBUTION, INC., f/k/a Chemical Tank Lines, Inc.; Chemical Leaman Tank Lines, Inc.; Fleet Transport Company, Inc.; Highway Transport, Inc.; Kenan Transport Co.; Mason and Dixon Tank Lines, Inc.; and Central Transport, Inc., Appellees.
Nos. 96-2768, 96-2394.
District Court of Appeal of Florida, Third District.
February 25, 1998.
Clarification Denied June 3, 1998.
*263 Agusta P. Posner, Tallahassee, for appellant.
McGuire, Woods, Battle & Boothe and Donald D. Anderson and Stacy L. Watson, Jacksonville; Waddell & Ready and Billy R. Ready, Auburndale; Arent Fox Kintner Plotkin & Kahn and Marc L. Fleischaker and Laurel A. Bedig, Washington, DC; Shumaker, Loop & Kendrick and C. Philip Campbell, Jr. and Ernest J. Marquart, Tampa; Blank Rome Comisky & McCauley and Ian M. Comisky, Michael L. Krancer and Mary Ann Mullaney, Philadelphia, PA; Winitz, Minkin & Lowe and Joseph Lowe and Cynthia Bernard, Miami; and The Harker Firm and Gary R. Letcher, Potomac, MD, for appellees.
Morgan, Lewis & Bockius and Richard A. Pettigrew and David Ashton and Scott Mitchell, Miami, for amici curiae Gary Salzman, William Wood and Sue Wood.
Before NESBITT, LEVY and SHEVIN, JJ.
NESBITT, Judge.
This case ensued when the State Department of Environmental Protection (formerly the Department of Environmental Regulation) (DEP) initiated an enforcement action against seven trucking companies, the appellees here, alleging that the companies were the responsible parties that had caused a hazardous substance to be released into the soil and groundwater of a vinyl manufacturing facility, Culbertson Plastics Company, in Dade County. Evidence indicated that each of the seven trucking companies had made deliveries of the hazardous substance[1] a liquid chemical called dioctyl phthalate or "DOP", to the Culbertson plant during the relevant time period. Affidavits of Culbertson employees stated that DOP had been spilled from truck hoses onto the ground during half of the DOP deliveries to the plant. However, with the exception of a bill of lading showing that a spill had occurred from a CTL Distribution (a.k.a. Chemical Tank Lines) (CTL) truck, there was no evidence as to which, if any, of the other six trucking companies had spilled DOP at the plant.
All seven companies moved for summary judgments below, CTL on a statute of limitations theory and the other six companies on the argument that there was no evidence that any of them had spilled DOP. The trial judge granted all motions for summary judgment. The DEP appeals. Because the issues with regard to CTL differ from those of the other appellees, we will address CTL separately. For the reasons set forth below, we affirm the summary judgments granted the "other six" trucking companiesChemical Leaman Tank Lines, Fleet Transport Company, Highway Transport, Kenan Transport Company, Mason & Dixon Tank Lines, and Central Transportbut reverse the summary judgment granted CTL.
In its argument against the six trucking companies where there was no evidence of spilling DOP, the DEP contended that a burden-shifting, market share liability[2] rationale should apply. The DEP argued that where there was evidence of wrongdoing *264 here, hazardous material spillageyet no evidence as to which of the companies may have spilled, a market share liability theory is proper. We disagree. Under the market share theory of recovery, the burden of proof would shift from the plaintiff (DEP) to the defendants (the trucking companies). Each company would be required to prove that it did not, in fact, spill any of the hazardous substance. We agree with the trial court's well-reasoned opinion that the DEP misconstrues the case law in this area.
The DEP argued that the instant situation was similar to that in the famous burdenshifting case, Summers v. Tice[3], making the analogy that the instant case was like having seven hunters in the forest shooting towards the plaintiff with one resultant injury to the plaintiff. We disagree with the DEP's analogy and make the following analogy instead: the instant case was like having seven hunters in the forest with weapons, only one of whom (CTL) was known to have fired his weapon. Following our analogy, though the other six hunters were carrying weapons, there was no evidence here that any of them fired his weapon. The wrongdoing is firing the weaponspilling the hazardous substancenot carrying the weapontransporting the hazardous substance.
Burden-shifting does not come into play unless and until it can be shown that the alleged defendants acted wrongfullythat is, where there is evidence of wrongdoing shown on the part of each defendant and only the issues of causation and apportionment of liability remain. In the instant case, where there was no such evidence as to the "other six" truckers, the burden of proof cannot be shifted. There can be no causation without showing a wrongful or negligent act in the first place. The case law addressing burdenshifting or market share liability involves situations where each of the defendants acted negligently but there was a lack of evidence as to which of the negligent defendants had caused the plaintiff's injury. That is not the situation presented to us here. Here, according to the evidence, we merely have six hunters walking through the forest with their weaponsthat is, six trucking companies making deliveries of the hazardous substance DOP. As far as the evidence shows, none of these six companies spilled any of the chemical. Without proof of wrongdoing, liability cannot attach. Therefore, we agree with the trial judge and affirm the summary judgments with regard to Chemical Leaman Tank Lines, Fleet Transport Company, Highway Transport, Kenan Transport Company, Mason & Dixon Tank Lines, and Central Transport.
The DEP's appeal of the summary judgment for CTL raises different issues. Unlike the situation with the other appellees, there was evidence presented that CTL had spilled DOP at the Culbertson planta CTL bill of lading upon which a notation was written that a spill had occurred. CTL obtained summary judgment below primarily by arguing that the statute of limitations[4] barred the DEP's action against it. We believe that summary judgment was inappropriate on statute of limitations grounds. We hereby follow and adopt the reasoning of the Fourth District's recent decision in State, Department of Environmental Protection v. Fleet Credit Corp., 691 So.2d 512 (Fla. 4th DCA 1997). The Fleet Court held that because contamination of the soil and groundwater by a hazardous substance is a continuing harm (until it is cleaned up), the statute of limitations does not begin to run until the harm is abated. Fleet, 691 So.2d at 514. Here, too, the same injury, the contamination of the soil and groundwater by a hazardous substance, has not yet been abated (by a cleanup), thus the statute of limitations does not bar the DEP's action.
*265 The DEP's action against CTL is for cleanup of the contaminated soil and groundwater, and is not a penalty assessment. The applicable Florida environmental statutes are chapters 376 and 403 of the Florida Statutes. Per section 376.307(7), Florida Statutes (1995), any statute of limitations on the DEP's claim to recover its costs in cleanup cases does not begin to run until the DEP has paid its last bill for the cleanup. As the cleanup has not been completed in the instant case, the statute has not begun to run. Therefore, we reverse the summary judgment for CTL and remand for trial on the merits.
CTL's cross-appeal argued that the CTL bill of lading with its handwritten notation indicating a spill of some 300 gallons of DOP was inadmissible. However, the bill of lading is undoubtedly admissible as a business record under section 90.803(6)(a), Florida Statutes (1995)[5]. The handwritten notation on the bill of lading is also admissible as part of that business record and, therefore, falls under that exception to the rule against hearsay. A bill of lading accompanies the delivery of a product, in this case DOP, to the buyer and serves to acknowledge the buyer's receipt of the product. See section 671.201(6), Florida Statutes (1995). Among other things, it lists the amount of the product that was delivered. If the amount indicated on the bill of lading was not the amount delivered because, for example, some of the product was spilled onto the ground, this discrepancy would be noted on the bill of lading at the time of the delivery. This is a common business practice. Because a bill of lading as a document of title is prima facie evidence of the facts set forth therein, were the discrepancy in amount not noted, the buyer would be acknowledging receipt of the entire amount listed on the bill. The notation indicating a certain amount was spilled would protect the buyer from being overchargedbilled for the expected delivery amount when the amount actually delivered was less. In this case, the notation would ensure that Culbertson would not be billed for the 300 spilled gallons. We therefore affirm the issue raised in CTL's cross-appeal, finding that the trial judge properly admitted the bill of lading.
Summary judgment affirmed as to appellees Chemical Leaman Tank Lines, Fleet Transport Company, Highway Transport, Kenan Transport Company, Mason & Dixon Tank Lines, and Central Transport; reversed as to appellee CTL Distribution, Inc., and remanded. The trial court's decision on the evidentiary issue raised in CTL's crossappeal is affirmed.
NOTES
[1] See sections 376.301(14) and 403.703(29), Florida Statutes (1995), which list "DOP" among hazardous substances.
[2] The market share liability theory was made famous by the California Supreme Court case Sindell v. Abbott Laboratories, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980), where eleven drug manufacturers were held liable for the injuries to a plaintiff who had developed cancer from the use of the drug DES. Although the plaintiff had not been able to prove which manufacturer's DES had caused her injuries, the Court shifted the burden of proof to the defendants. Each defendant was ultimately held liable for a percentage of damages equivalent to its market share in the DES market. Florida has also adopted market share liability in similar cases. See Conley v. Boyle Drug Co., 570 So.2d 275 (Fla. 1990).
[3] 33 Cal.2d 80, 199 P.2d 1 (1948). The case involved two hunters, each of whom had wrongfully shot his weapon in the direction of the plaintiff, who was hit by one of the two bullets. There was no evidence as to which of the two hunters had fired the shot that injured the plaintiff. However, because both hunters had negligently discharged their weapons, the California supreme court shifted the burden of proof to the hunters so that, to escape liability, each would have to prove that his was not the shot that hit the plaintiff. As neither was able to proffer this proof, both were held liable.
[4] Section 95.11(3)(f), Florida Statutes (1995), provides for a four-year statute of limitations in actions founded on statuory liability.
[5] In fact, a bill of lading is a document of title and, as such, is prima facie evidence of its own authenticity. See section 671.202, Florida Statutes (1995), which codified in Florida law U.C.C. § 1-202.