723 So.2d 314 (1998)
HEALTHSOUTH SPORTS MEDICINE AND REHABILITATION CENTER OF BOCA RATON, INC. and Nadine Queen, Appellants,
v.
Donald ROARK and Claudia Roark, Appellees.
No. 97-3437.
District Court of Appeal of Florida, Fourth District.
November 25, 1998.
Rehearing Denied February 5, 1999.
*315 Linda R. Spaulding and Vanessa A. Reynolds of Conrad & Scherer, Fort Lauderdale, for appellants.
R. Fred Lewis of Kuvin, Lewis, Restani & Stettin, P.A., Miami, for appellees.
KLEIN, J.
Appellants, defendants in a medical malpractice case, appeal a judgment in favor of plaintiffs. They raise two issues: whether the plaintiff could be comparatively negligent for failing to stop smoking so that his wound would heal and, whether an undisclosed witness should have been allowed to testify as an "authorized representative" of a party.
Appellee Donald Roark (plaintiff) broke his ankle, and Dr. Purita operated, utilizing a metal plate and screws. Eleven weeks later Dr. Purita referred plaintiff to defendant Healthsouth where plaintiff received physical therapy from defendant Queen. During that physical therapy one of the screws in his leg became exposed and osteomyelitis, an infection in the bone, set in requiring four additional surgical procedures.
In this suit which plaintiff brought against Healthsouth and its employee, Queen, the defendants alleged comparative negligence, and presented evidence that plaintiff had not followed instructions to stop smoking. Smoking delays the healing of wounds. The jury found the defendants eighty percent negligent and plaintiff twenty percent comparatively negligent. The trial court thereafter granted plaintiff's motion for directed verdict on the issue of comparative negligence, stating that there was no evidence that plaintiff had failed to follow instructions or that smoking was a legal cause of his osteomyelitis.
It is well settled that failure to follow medical advice may constitute comparative negligence on the part of the plaintiff. Chess v. Wright, 602 So.2d 673 (Fla. 4th DCA 1992) and cases cited therein. In Nordt v. Wenck, 653 So.2d 450 (Fla. 3d DCA 1995), the third district concluded that there was sufficient evidence to support a jury verdict finding a plaintiff comparatively negligent who had, contrary to her physician's advice, not done physical therapy, not maintained her legs in an elevated position, and not quit smoking. See also Wyatt v. United States, 939 F.Supp. 1402 (E.D.Mo.1996) (paraplegic plaintiff found comparatively negligent in medical malpractice case because his failure to stop smoking, as he had been directed to do, contributed to pressure sores on his hips not healing and becoming infected, resulting in amputation).
Plaintiff relies on Matthews v. Williford, 318 So.2d 480 (Fla. 2d DCA 1975) and Whitehead v. Linkous, 404 So.2d 377, 379 (Fla. 1st DCA 1981), which held that conduct of a patient which contributes to his medical condition is not a defense to malpractice which causes a distinct subsequent injury. Those cases are distinguishable in that the conduct the defendants were attempting to raise as comparative negligence had occurred prior to the medical condition which led to the alleged negligent medical treatment. Whitehead and Matthews would be applicable if defendants *316 were alleging in the present case that plaintiff's failure to stop smoking was the reason he injured his ankle in the first place. That, of course, is not the case.
Dr. Purita testified that he had counseled plaintiff about smoking. Plaintiff admitted that his physician had instructed him to "slow down" on his smoking. Another of plaintiff's physicians, who treated him after his wound had become infected, had it written in his notes that plaintiff was smoking two packs a day during the critical period of time in this case. There was accordingly evidence from which the jury could find that the plaintiff failed to follow the advice he received not to smoke.
As to whether the smoking caused the condition, defendants relied on a plastic and reconstructive surgeon, Dr. Frederick Barr. Dr. Barr testified that smoking "has been documented in literature as a problem in wound healing." The main cause of wounds not healing is poor blood supply, and smoking causes poor blood circulation. Dr. Barr further testified that in his opinion, there were three factors which contributed to the plaintiff's condition, the original injury, the treatment for that injury, and the smoking, all within a reasonable medical certainty. The trial court should not have directed a verdict on plaintiff's comparative negligence. Pollock v. Goldberg, 651 So.2d 721, 723 (Fla. 4th DCA 1995).
Defendants also assert that the trial court erred in not allowing a representative of the defendant Healthsouth, who was not specifically named as a witness, to testify in response to Dr. Purita. Dr. Purita, who had performed the original surgery, testified that he had authorized the therapist at Healthsouth, Queen, to do debridement (removal of dead tissue or foreign matter from a wound) only with a blunt, not a sharp instrument. In addition, Dr. Purita testified that the fact that there were two different reports of Queen's initial evaluation of plaintiff could mean that Queen had falsified one of the reports in an attempt to cover up her negligence.
In order to rebut this testimony, defendant Healthsouth called its administrator, Susan Gassey. Plaintiff objected because her name was not on the witness list. The pretrial order required the parties to exchange the "names and addresses of all fact witnesses." Healthsouth responded that Gassey was included under the listing: "All parties to this action and/or their authorized representatives." The trial court sustained plaintiff's objection, but did allow Gassey to testify as to any conversations she had with Dr. Purita as to which Dr. Purita had already testified.
The court did not permit Gassey to testify as to several factual matters. Gassey proffered testimony that Dr. Purita had not given any standing orders prohibiting the use of sharp debridement at Healthsouth, and that he had no authority to do so. Gassey also proffered an explanation for the two different reports which would have refuted Dr. Purita's suggestion that one of the reports had been falsified.
We discount the importance of Gassey's testimony that she, as the administrator of Healthsouth, had never been given standing orders by Dr. Purita that he did not want sharp debridement performed on any patients. Dr. Purita never claimed to have given such instructions. He testified that he authorized only blunt debridement for this plaintiff, and that he would not have authorized a physical therapist to do sharp debridement. Accordingly, Gassey's proffered testimony that Dr. Purita never gave her standing instructions for sharp debridement never to be performed on any patient, as well as her testimony that he did not have the authority to do that, did not contradict Dr. Purita's testimony and was not relevant.
This leaves one issue, involving falsification of records. Gassey's proffered testimony was to the effect that Healthsouth was then using an out-of-town transcription service and that the operation of that transcription service sometimes resulted in two reports, one corrected and one uncorrected, being in a patient's file.
As authority for their argument that Gassey, even though not specifically named, should have been able to testify as a representative of Healthsouth, defendants rely primarily on Casa de Alabanza v. Bus Service, Inc., 669 So.2d 338, 339 (Fla. 3d DCA 1996). *317 That case involved a dispute between a church and a mechanic who had not properly repaired the church's bus. The third district reversed the trial court for refusing to allow the church to call its representative as a witness to testify. The witness would have testified about the defective repairs. The church had stated in its witness list that it would be calling "[a]ny and all parties to this lawsuit," and the third district concluded that this was sufficient. Casa de Alabanza is the closest case on point.
Almost twenty-five years ago, in Jones v. Seaboard Coast Line Railroad Co., 297 So.2d 861, 863 (Fla. 2d DCA 1974), the court observed that "litigation should no longer proceed as a game of `blind man's bluff." This court recently quoted that statement in Department of Health and Rehabilitative Services v. J.B., 675 So.2d 241 (Fla. 4th DCA 1996). See also Grau v. Branham, 626 So.2d at 1059 (Fla. 4th DCA 1993) ("civil trials are not to be ambushes").
Allowing parties to comply with witness exchange requirements by listing unnamed "authorized representatives" only encourages trial by ambush. It can result in additional hearings before trial court judges to either strike such a designation or require more detailed information. It can also result in additional interrogatories and depositions. We should be attempting to make discovery less burdensome, rather than more burdensome, and requiring specific names and addresses will further that goal. We conclude that listing an "authorized representative" does not comply with a pretrial order requiring the exchange of names and addresses of fact witnesses. Nor does the listing of the generic term "party," except where the party is an identifiable person. We thus disagree with Casa de Alabanza.
Our conclusion is consistent with the spirit of Binger v. King Pest Control, 401 So.2d 1310, 1313 (Fla.1981), in which the Florida Supreme Court stated:
[W]e now hold that a pretrial order directing the parties to exchange the names of witnesses requires a listing or notification of all witnesses that the parties reasonably foresee will be called to testify, whether for substantive, corroborative, impeachment or rebuttal purposes. Obviously, a general reference to "any and all necessary" impeachment or rebuttal witnesses, as was the case here, constitutes inadequate disclosure. We expressly disapprove decisions in the first three categories of witness disclosure cases which hold or imply that certain types of witnesses are automatically exempt from the dictates of a pretrial disclosure order.
Having concluded that Gassey was not disclosed, we must now consider whether she should still have been allowed to testify. In Binger, the Florida Supreme Court held that, where the names of witnesses are not disclosed in compliance with a pretrial order, trial judges
should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party. Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify. [footnotes omitted]

Id. at 1314.
In the present case the record does not show whether allowing Gassey to testify as to the records would have prejudiced the plaintiff because of surprise. Nor does the record show, along those same lines, whether the plaintiff could have cured any prejudice. As to the factor of whether the defendants were in bad faith noncompliance with the pretrial order, the record does not show any reason *318 why Gassey's name was not disclosed. Finally, it is possible the trial would have been disrupted because permitting Gassey to testify that the duplicate records were the fault of the transcription service could have resulted in a trial within a trial on that issue.
The trial court's discretion in determining whether an uncalled witness can testify is broad. Binger at 1312. Defendants have failed to demonstrate an abuse of that discretion in this case.
We therefore reverse and remand for entry of a reduced judgment reflecting plaintiff's comparative negligence and certify conflict with Casa de Alabanza.
WARNER, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.