806 So.2d 530 (2001)
Helmut RIEDEL, etc., Appellants,
v.
SHERATON BAL HARBOUR ASSOC., et al., Appellees.
No. 3D00-416.
District Court of Appeal of Florida, Third District.
November 7, 2001.
Rehearing and Rehearing Denied February 20, 2002.
*531 Mandina & Ginsberg, and Mark Ginsberg, Key West, for appellants.
Kubicki Draper, and Angela C. Flowers, Miami, for appellees.
Before SCHWARTZ, C.J., and FLETCHER, and RAMIREZ, JJ.
Rehearing and Rehearing En Banc Denied February 20, 2002.
RAMIREZ, J.
Helmut Riedel, individually and as personal representative for the estate of his wife, Doris Riedel, appeals a final judgment in favor of the Sheraton Bal Harbour. We reverse the denial of Riedel's motion for a directed verdict as to liability and remand for a new trial on damages because the Sheraton failed to use reasonable care in selecting a doctor when it undertook to provide medical assistance for Doris Riedel.
Doris Riedel was forty-six years old, married to Helmut for twenty-seven years. She had been a diabetic for thirty-two years and was insulin dependent, giving herself two injections per day and checking her blood sugar level daily.
The Riedels arrived at the Sheraton Bal Harbour from Germany on December 26, 1994, for a vacation on Miami Beach. The next morning, Mrs. Riedel was not feeling well and did not go to breakfast. She spent the day in bed, complaining of intermittent bouts of diarrhea and vomiting. At 6:00 P.M., following Mr. Riedel's request for medical assistance to the front desk, paramedics came to the room accompanied by hotel security personnel. The German front desk clerk also came up to the room to act as interpreter because the Riedels did not speak English. Mrs. Riedel's vital signs did not indicate a need for emergency transport and she was advised that any further tests needed to be conducted at the hospital. The Riedels did not wish to go to the hospital and were reassured by the desk clerk that the hotel had a doctor available.
As the evening progressed, Mrs. Riedel's condition worsened. Mr. Riedel went down to the front desk several times to express his concern about his wife's condition and finally requested that the doctor be called. The hotel contacted On-Call Medical Services, who sent Rosendo Gonzalez *532 to treat Mrs. Riedel. Neither security personnel nor the German-speaking front desk clerk accompanied Gonzalez to the room.
Rosendo Gonzalez is a licensed doctor in Peru, but only had a temporary physician's assistant license in Florida. When he arrived at the Riedels' room, he identified himself as either "the doctor from On-Call" or "the doctor from reception." Although communication was difficult, Gonzalez did learn that Mrs. Riedel was an insulin dependent diabetic, but did not check her blood sugar level nor inquire about her last injection. Gonzalez prescribed Emetrol and Pedialyte for Mrs. Riedel's diarrhea and apparent dehydration, both of which are contraindicated for diabetics. Mr. Riedel immediately took a taxi to the nearest pharmacy, returned with Emetrol and Pedialyte, and administered one dose at 12:30 AM and another dose approximately one hour later. When he awoke in the morning, his wife was dead. An autopsy revealed that she had died from ketoacidosis, an absolute deficiency of insulin which causes the body to turn fats into acids.
Mr. Riedel brought suit against the Sheraton for negligent selection and retention of On-Call Medical Services. A jury found that the Sheraton was not negligent and that Gonzalez was not the Sheraton's agent. We now overturn that verdict.
"The existence of a legal duty is not a question for the jury, but rather a question of law for the court." Garcia v. Lifemark Hospitals of Florida, 754 So.2d 48, 49 (Fla. 3d DCA 1999). See also Florida Power & Light Co. v. Periera, 705 So.2d 1359 (Fla.1998). "[A]n innkeeper has a special relationship with his guests which gives rise to a duty to protect them against unreasonable risk of physical harm." Adika v. Beekman Towers, 633 So.2d 1170, 1170-71 (Fla. 3d DCA 1994). "[T]he standard of care owed to an occupant of a hotel room (an invitee) is reasonable care." Phillips Petroleum Co. of Bartlesville, Okl. v. Dorn, 292 So.2d 429, 431 (Fla. 4th DCA 1974). A hotel also has a duty to implement reasonable inspection procedures in order to protect its guests. Fontana v. Wilson World Maingate Condo., 717 So.2d 199 (Fla. 5th DCA 1998).
Although the Sheraton initially had no obligation to provide the Riedels with medical assistance, once it undertook this task, it had a duty to exercise reasonable care. See Buscemi v. Intachai, 730 So.2d 329, 330 (Fla. 2d DCA 1999) ("When anyone undertakes to do a particular act for another, the act undertaken must be done with reasonable care so as not to injure the other person by reason of the act performed."). See also Angulo v. Szklaver, 746 So.2d 562 (Fla. 3d DCA 1999) (although bus driver owes no duty to passenger once that passenger has safely disembarked from the bus, if special service is undertaken then duty is created); Priester v. Grand Aerie of the Fraternal Order of Eagles, Inc., 688 So.2d 376, 378 (Fla. 3d DCA 1997) (once appellees undertook task of replacing ousted leaders, they assumed duty to do so in a reasonable and prudent manner and appellees cannot escape duty of care if reasonable back ground inquiry would have disclosed dangerous propensities of replacement president).
"Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." National Title Ins. Co. v. Lakeshore 1 Condo. Assoc., Inc., 691 So.2d 1104, 1106 (Fla. 3d DCA 1997) (quoting McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992)). "[T]he trial and appellate *533 courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant." McCain, 593 So.2d at 503. Sheraton Bal Harbour represented to its guests that it provided non-emergency medical services. If a guest wanted a doctor to come to the room, he was instructed to ask the front desk, concierge, or operator, who would in turn contact On-Call. In fact, the Director of Security had informed his staff that On-Call was the only medical provider authorized to treat the Sheraton's guests in their hotel rooms. The Sheraton told the Riedels it would provide a doctor. Instead, it provided a temporarily licensed unsupervised physician's assistant, thereby creating a foreseeable zone of risk.
Once it was shown that the Sheraton breached its duty to guard against a foreseeable risk, Mr. Riedel's motion for a directed verdict should have been granted. "A motion for directed verdict should only be denied and the case submitted to the jury if conflicting evidence has been presented by the parties." Williamson v. Superior Ins. Co., 746 So.2d 483, 485 (Fla. 2d DCA 1999). A trial judge is authorized to grant a motion for directed verdict when there is no evidence or reasonable inferences to support the opposing position. Cooper Hotel Servs., Inc. v. MacFarland, 662 So.2d 710, 712 (Fla. 2d DCA 1995). Even the absence of industry standards does not insulate the Sheraton from liability when credible evidence has been presented pointing to measures reasonably available to deter incidents of this kind. Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442, 447 (Fla. 5th DCA 1981).
In this case, there was no conflicting evidence. Several security experts, including Sheraton's corporate security director, testified that it is advisable that a hotel not offer medical services, but that if it chooses to do so, it should conduct a background check on the service it plans to use. A background check of On-Call would have revealed that it was operated by William and Marlene Villafana, a young and inexperienced husband-and-wife team with no medical training or medical administration training. On-Call obtained its business by soliciting front desk clerks, hotel operators and concierge personnel, who would then receive a commission of $10 to $30 per referral. It had no occupational license, its address was at a Mailboxes Etc., and its telephone was Marlene Villafana's home phone. It had no licensed doctor with staff privileges at any local hospital, and it had no liability insurance. An investigation would have also revealed that the Villafanas had been involved in the death of another tourist at a Marriott Hotel in Orlando the previous year. The Sheraton owed the Riedels a duty to protect them from unreasonable risk of harm when providing medical assistance. The Sheraton's failure to make any inquiry about On-Call created a foreseeable risk that Mrs. Riedel would receive improper medical care. Therefore, Mr. Riedel's motion for a directed verdict should have been granted.
At trial, the Sheraton placed a heavy emphasis on Mrs. Riedel's failure to take her insulin or monitor her blood sugar as the major cause of her death. However, her failure to take insulin or check her blood sugar level cannot be a legal cause of her death. Any negligence on her part which occurred prior to being examined by Gonzalez simply provided the occasion for the actions of the Sheraton and Gonzalez. See Vendola v. Southern Bell Telephone & Telegraph Co., 474 So.2d 275 (Fla. 4th DCA 1985) (plaintiff's suicide attempt was merely pre-existing condition and therefore not a legal cause of damage in negligence action against phone company for failure to respond to request for *534 ambulance); Metropolitan Dade County v. Colina, 456 So.2d 1233 (Fla. 3d DCA 1984) (county's negligence in failing to repair stoplight merely provided occasion for negligence of drivers who caused accident); Whitehead v. Linkous, 404 So.2d 377 (Fla. 1st DCA 1981) (conduct of patient which contributes to medical condition merely furnishes the occasion for medical treatment and subsequent negligence of doctor and hospital). Thus, on remand, the Sheraton should not be allowed to argue that Mrs. Riedel was comparatively negligent by creating the situation which led to her being treated by Gonzalez. Additionally, Mr. Riedel's failure to familiarize himself with diabetes should not be at issue. He adequately fulfilled any spousal duty of care owed to his wife by caring for her while she was ill, twice summoning medical help, and immediately following "the doctor's" orders.
Reversed and remanded for a new trial consistent with this opinion.