WELLS, Judge.
Johnson Construction Management, Inc. appeals a jury verdict in Miguel Lopez’ favor in this personal injury action. Johnson argues that the trial court erred in failing to grant its motion for summary judgment, in thereafter failing to grant its motion for directed verdict, and ultimately in permitting the jury to reach a verdict by means of an impermissible pyramiding of inferences. With no proof from which a jury could base a finding of wrongdoing by this defendant, we agree with the conclusion that the judgment against Johnson must be reversed.
According to Lopez, a United Airlines employee, he was on a coffee break when he noticed a puff of smoke coming from a room located on Concourse F at Miami International Airport (MIA). When he entered the unlocked room (room F1530) to investigate, he was burned by an exploding electrical panel. Lopez subsequently brought suit against Metropolitan Dade County, the owner-operator of the airport, claiming negligent renovation, repair, and construction work in room F1530; negligent inspection of the renovations, repairs and construction performed in room F1530; negligent maintenance of room F1530; and, failure to warn of risk of harm inside the room. He later joined as defendants the owners and operators of two vending machines located outside the room, claiming that they had negligently used jumper cables to connect an electrical outlet needed to power the machines to the high voltage electrical panel which exploded. He also joined as defendants Johnson and its electrical subcontractor, Kinetic Electric, Inc., after the County answered a set of interrogatories stating that these two entities were responsible for locking the door to the room.[1] At the time Lopez was injured, Johnson was building a bridge at Concourse E to support a baggage conveyor system.
Four and one half years after this action was filed, summary judgments were entered in favor of the vending machine owners and operators when it was determined that the machines were powered by a fully functional outlet rather than the outlet “hot wired” to the allegedly exploding electrical panel. Judgment was also entered in favor of Johnson’s electrical subcontractor, Kinetic Electric, upon an undisputed showing that it had no access to, and had performed no work in, room F1530. Johnson likewise sought summary judgment, arguing that neither it nor any of its subcontractors had any connection to the room. The court rejected that argument and the case proceeded to trial against the County and Johnson.
At the start of the trial, Johnson again asserted that it had no connection to room F1530. Lopez argued that certain documents that had been in Johnson’s possession, but had been destroyed, would have established that room F1530 was within the scope of Johnson’s contract. Lopez maintained that as a result of the missing evidence, he should be permitted to argue that the jury could infer Johnson’s “control” of the room. Rejecting Johnson’s claim that it was being “ambush[ed],”[2] the *208 trial court permitted Lopez to introduce evidence regarding loss of the documents and to argue that Johnson’s control of the room- could be inferred from the missing documents.
The case proceeded with Lopez asserting that his injuries were caused by a loose connection in a high voltage panel which caused the panel’s circuit breakers to melt and slowly burn, exhausting the oxygen in the room and resulting in a flash explosion when he opened the door.[3] Although Lopez introduced substantial evidence to show that electrical work was being performed in the vicinity of the room and possibly even inside, there was no evidence that Johnson performed any work on either the electrical panel or elsewhere in room F15B0.
At the close of the evidence, Johnson moved for a directed verdict. Lopez maintained that circumstantial evidence which showed that electrical work was being done in and around the room proved that Johnson was in control of the room and was obligated to keep the room locked, a duty that Johnson breached when Lopez entered the unlocked room and was injured.[4] The trial court denied Johnson’s motion for directed verdict and permitted the case to go to the jury on the “issue of whether [Johnson] had control or not of that particular room.” With no evidence upon which either breach of duty or causation could have been found, we conclude that the directed verdict sought should have been granted. See Riedel v. Sheraton Bal Harbour Assoc., 806 So.2d 530, 533 (Fla. 3 DCA 2001) (citing Cooper Hotel Servs., Inc. v. MacFarland, 662 So.2d 710, 712 (Fla. 2d DCA 1995), and observing that “[a] trial judge is authorized to grant a motion for directed verdict when there is no evidence or reasonable inferences to support the opposing position.”); Lester’s Diner II, Inc. v. Gilliam, 788 So.2d 283, 285 (Fla. 4th DCA 2000) (reversing jury verdict for lack of competent, substantial evidence).
In McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992), the Florida Supreme Court held that a legal duty exists if the defendant’s conduct creates a fore *209 seeable zone of risk that poses a general threat of harm to others. However “[o]ne important attribute of a legal duty that is assumed in many cases but not expressed is that the defendant must have had the ability to avoid the risk.” See Aguila v. Hilton, Inc., 878 So.2d 392, 398 (Fla. 1st DCA 2004) (observing that in McCain, “the court clearly implied that the defendant must be in a position to control the risk”).
On the facts presented, the trial court could properly conclude that if the jury believed Johnson had done work in the room, Johnson had a duty to lock the door upon exiting. The problem is that there was absolutely no evidence upon which a jury could conclude that this duty was breached. Lopez was injured on a Saturday afternoon approximately twenty four hours after Johnson left the job site.[5] There is no evidence that the door was not locked when Johnson left the job site the day before Lopez was injured.
As to some greater duty to “control” the room, under the facts presented, that was an impossibility, due to the undisputed evidence that numerous keys to the room had been distributed to numerous airport and non airport personnel.[6] Entry by one of these many persons who held a key was a risk Johnson coneededly could not control, and the breach of which, it could not be held accountable for. Lopez’ counsel agreed at oral argument that Johnson was neither expected nor required to assure that the door to this room remained locked twenty four hours a day. Under these facts, breach of duty was not established.
There also was no evidence upon which a jury could conclude Johnson’s actions were the cause of Lopez’ injury. As to this point, we find our analysis in State, Dept. of Envtl. Regulation v. CTL Distrib., Inc., 715 So.2d 262, 263 (Fla. 3d DCA 1998), persuasive. In CTL, the Department of Environmental Protection (DEP) initiated an enforcement action against seven trucking companies, alleging that the companies had caused the hazardous substance “DOP” to be released into the soil and groundwater of the Culbertson Plastics Company. Evidence indicated that each of the seven trucking companies had made DOP deliveries during the relevant time period. Affidavits of Culbertson employees confirmed that DOP had been spilled from truck hoses during half of the DOP deliveries to the plant. However, with the exception of a bill of lading showing that a spill had occurred from a CTL truck, there was no evidence as to which, if any, of the other six trucking companies had spilled DOP at the plant.
All seven companies moved for summary judgment, CTL on a statute of limitations theory, the other six on the argument that there was no evidence that any of them had spilled DOP. The trial judge granted all of the summary judgment motions. On appeal, we rejected the claim that the case was like Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948), where two hunters negligently discharged their weapons in the direction of the plaintiff who was injured. CTL, 715 So.2d at 264 n. 3. We affirmed the summary judgments in favor of the “other six” trucking companies concluding *210 instead that the ease was more akin to having seven hunters in the forest with weapons, only one of - whom (CTL) was known to have fired his weapon. “[Tjhough the other six hunters were carrying weapons, there was no evidence here that any of them fired his weapon. The wrongdoing■ is firing the weapon — spilling the hazardous substance-not carrying the weapon — transporting the hazardous substance.” Id. at 264 (some emphasis added).
Applying CTL’s analysis, the wrongdoing in this case was leaving the door unlocked, not having access to, or some control of, the room. There was no evidence whatsoever as to when the door was left unlocked or by whom. There certainly is no evidence that anyone associated with Johnson left the door unlocked. As we said in CTL, there can be no causation without showing a wrongful or negligent act in the first place.... Without proof of wrongdoing, liability cannot attach.[7] Id.
Accordingly, the directed verdict Johnson sought should have been granted.[8] See St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc., 784 So.2d 500, 504 (Fla. 5th DCA 2001) (“[a] motion for directed verdict should be granted when there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the nonmoving party”). The judgment against Johnson is therefore reversed and this case remanded for entry of judgment in Johnson’s favor.

. Early in the litigation, interrogatories were propounded asking the County what contractors/subcontractors did electrical work in the room. The County identified Johnson and Kinetic. With contract documents refuting this claim, Johnson served interrogatories asking what witness would testify that Johnson or Kinetic did the work. The County answered "none.”

. We have serious misgivings about this tactic. Cases in which evidence has been de *208 stroyed, either inadvertently or intentionally, involve discovery violations and application of Florida Rule of Civil Procedure 1.380 for imposition of sanctions. Nationwide Lift Trucks, Inc. v. Smith, 832 So.2d 824, 826 (Fla. 4th DCA 2002). Rule 1.380 is not self-executing, but contemplates the imposition of sanctions on motions to compel and for sanctions with attendant notice and opportunity to be heard. As Johnson's counsel pointed out to the trial Court, there were no pending motions against Johnson seeking to compel or claiming spoliation when trial commenced.
We also have serious misgivings ás to the propriety of the sanction imposed. The propriety of a sanction imposed for failing to preserve evidence depends on (1) the willfulness or bad faith of the responsible party, (2) the extent of prejudice suffered by the requesting party, and (3) the remedy imposed to cure the prejudice. See Nationwide Lift Trucks, 832 So.2d at 826. In this case, the jury was permitted to infer a fact from missing documents on no more than a showing that Johnson’s documents had been destroyed by the warehouse where they were stored after Johnson went into bankruptcy and failed to pay its bill.

. This theory is contrary to that asserted by Lopez for almost five years against the vending machine owners and operators and to the findings of Miami Dade County's Fire Investigation Report which concluded that “the fire occurrbd due to a short circuit caused when the jumper wires from the open electrical junction box were used to contact the electrical components within the electrical power distribution panel.” In other words, the fire occurred when someone attempted to hot wire the electrical box.

. While some duty to properly place a sign on the room was initially mentioned, the testimony was that there was a sign on the door indicating that it was an electrical room.

. The unrebutted evidence was that except for Johnson's plumbing subcontractor, which was re-routing a sewer pipe the day before Lopez was injured, no Johnson employee had been on this job site for six full days before Lopez was injured.

. The uncontradicted testimony was that Johnson applied for a key to room E2273, a mechanical room located on a different concourse. Although Johnson was told that the key would open a number of rooms, it had no knowledge that the key would also open room F1530.

. Lopez also argues that the jury’s verdict was supported by evidence of "numerous safety violations and negligent acts that caused grievous injury to Mr. Lopez.” The problem with this position is the trial judge's ruling that the issue submitted to the jury was Johnson's "control” of room F1530. Thus, it is to a breach of that duty that Lopez needed to submit evidence. Lopez submitted none. As a matter of law and logic, some control over the room, standing alone, does not support a finding of breach of duty, where dozens of others had keys that would open the door to the same room. Accordingly, permits, drawings, videotapes and pictures, even if supporting the conclusion that Johnson had done work in the room and thus had some control over it, does not change our analysis.

. Any other result would equate to a verdict against Johnson based on nothing more than rank speculation, the exact danger at which the rule against pyramiding inferences was aimed. Voelker v. Combined Ins. Co. of America, 73 So.2d 403, 406-7 (Fla. 1954) (observing that the rule providing that an inference may not be drawn from another inference, as opposed to being drawn from an established fact, is designed to protect litigants from verdicts or judgments based on speculation); see also Food Fair Stores, Inc. v. Trusell, 131 So.2d 730, 733 (Fla.1961) (confirming that circumstantial evidence "will not support a jury inference if the evidence is purely speculative and, therefore, inadequate to produce an inference that outweighs all contrary or opposing inferences”); Tranter v. Wible, 191 So.2d 595, 598 (Fla. 4th DCA 1966) (observing "[a] jury's decision must have a rational predicate in the evidence and cannot rest on mere whim, guess work or suspicion”). The exception to this rule is when the first inference is inescapable, that is, when "no contrary reasonable inference may be indulged,” another may be drawn from it. Voelker, 73 So.2d at 407; Nielsen v. City of Sarasota, 117 So.2d 731, 733 (Fla.1960) ("if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences”); Green House, Inc. v. Thiermann, 288 So.2d 566, 568 (Fla. 2d DCA 1974) (a second inference cannot be superimposed upon a prior inference where the prior inference "was not established to the exclusion of all other reasonable inferences”).